No. 37.—TILLINGHAST, STARK & Co., plaintiffs in error, vs. ROBERT WALTON, for the use, &c. defendant.

[1.] Whether, under the Judiciary Act of 1799, authorising the examination of witnesses by commission, it is not the duty of the Clerk to name the Commissioners, and insert their names in the commission, before issuing it. Quere.

[2.] If the relation of the Commissioner to either party in the cause, is such as to warrant the inference, that he may act under a bias in favor of either party, he is not competent to act as Commissioner.

[3.] The clerk of the counsel for the party who sues out the commission for the examination of a witness by interrogatories, is not competent to act as Commissioner.

Assumpsit, admissibility of Interrogatories. Muscogee Superior Court, May Term, 1848. Before Judge ALEXANDER.

The facts are stated in the opinion of the Court.

JONES, BENNING & JONES, and THOMAS & DOWNING, for plaintiffs in error, cited—5 *Mass.* 219. 1 *Root,* 259, 226. 2 *Penn.* 200. 1 *Ib.* 454. 5 *Conn.* 222.. 2 *Greenl.* 408. 5 *N. H.* 94. 14 *Pick.* 285. 2 *U. S. Dig.* 212, 13.

HINES HOLT, for defendant in error.

*By the Court.*—NISBET, J., delivering the opinion.

Interrogatories were offered in evidence in this case, executed by Mr. Lee and another, as Commissioners. The answers of the witness were in the hand-writing of Mr. Lee. Mr. Lee was, at the time of the execution of the Interrogatories, the clerk of Col. Holt, who was counsel for the defendant in error, at whose instance the commission was sued out. The reading of the depositions was objected to ,because taken before Mr. Lee as a Commissioner, who was clerk for the counsel of the party who propounded them. Judge Alexander overruled the objection, and he is claimed, in that decision, to have committed error. We think the depositions ought to have been rejected. The manner of taking testimony by deposition in this State, is prescribed by Statute. The manner of taking testimony, required in causes before the Superior and Inferior Courts of this State, by com-

mission, is defined in the 23 *sec. of the Judiciary Act of* 1799. The mode of taking it, in certain limited jurisdictions, and for certain special purposes, is a little different. This question is determinable under the Act of 1799. The section which relates to it is in the following words : "Where any witness resides out of the State, or out of any county in which his testimony may be required in any cause, it shall be lawful for either party, on giving at least ten days notice to the adverse party, his, her or their Attorney, accompanied with a copy of the Interrogatories intended to be exhibited, to obtain a commission from the Clerk of the Court in which the same may be required, *directed to certain Commissioners*, to examine all and every such witness or witnesses, on such Interrogatories as the parties may exhibit; and such examination shall be read at the trial, on motion of either party." *Prince*, 425.

Either party, under this Act, is entitled to a commission, upon giving ten days notice, and furnishing his adversary with a copy of his Interrogatories. It issues to him upon application to the Clerk of the Court in which the testimony is required, as matter of right. The Act does not declare whose duty it shall be to name the Commissioners, and to insert their names in the commission. Our practice has been, under the Act, for the commission to issue in blank, for the party applying for it to select such persons to act as Commissioners, as his convenience, or his pleasure, or his interest may indicate, and for the Commissioners themselves to insert their own names in the commission. The party of course selects his Commissioners at the peril of having his testimony rejected, if according to law and the usages of our Courts, they are improper persons.

[1.] It may be well doubted whether the Act does not devolve that duty upon the Clerk. He is required to issue a commission, "directed to certain Commissioners to examine, &c. Is he not required to direct the commission to Commissioners, and can that be done without designating individuals as such ? Is the paper a commission at all, without Commissioners named in it? The authority for them to act is derived from the official seal and signature of the Clerk—from the commission thus authenticated, and not from the nomination, subsequently to that authentication, made by the party. It may be well doubted whether the Legislature did not intend to cast the responsibility

Tillinghast, Stark & Co. vs. Walton.

of the nomination upon the Clerk—upon an officer standing in-
different between the parties. The Commissioners are not the
agents of the party suing out the commission, but the law. It is
their duty to act impartially, and protect the interests equally of
both parties. They are agents of the law for this purpose.
This is true in those States where both parties have the right of
naming Commissioners. *Per Lord Eldon, in Campbell vs. Scou-
gal*, 19 *Vesey*, 552. *Peters C. C. R.* 85. A *fortiori* is it true, as
here, where one party certainly has no right to nominate. The
commission, it would seem, ought to be perfect when it leaves
the hands of the Clerk. Such a construction as is now indicated,
would increase the certainty of an impartial execution of the
commission. The Statute of Alabama, upon this subject, is very
much like our own—indeed, in the particular now under consider-
ation, almost identical with ours. There the Clerk is directed to
issue the commission " to one or more persons," here " to certain
Commissioners." The Supreme Court of that State have deter-
mined, that under their Statute, the commission cannot issue in
blank. They say, " the commission to take a deposition must be
perfect, when it leaves the hands of the Clerk, and cannot after-
wards undergo an alteration but by consent. He is directed to
issue it to one or more persons, " to take and receive the deposi-
tions of the witness named in it. If sent forth in blank, it, of
course, issues to *no person*, and does not satisfy the requirement of
the Statute. And though the Clerk give his consent to one re-
ceiving a commission to examine witnesses, to fill all blanks, this
will not legalize the act; for his authority extends not beyond
the time when it leaves his hands." *Worsham vs. Goar, Admr.*
4 *Porter*, 441, 447.

[2.] The Act of 1799 is wholly silent as to the qualification of
Commissioners. Any one there may act, who has attained to the
age of citizenship, who is of sound mind, not disqualified by crime,
and who stands indifferent between the parties in the cause in
which the testimony is required. He must bear such relation to
the parties as will secure his impartiality in the execution of the
commission. He, in other words, should not, directly, or indirectly,
bear to either party such a relation, as would authorize a presump-
tion of a bias in the execution of the trust, in favor, or against either
party. In the absence of all prescription of fitness or qualification, we
think this is necessary to the ends of justice, and plainly required

by the character of the trust devolved upon him.   He ought to be as free from bias as a juryman.   In the administration of justice, nothing is more important than the truthful and natural representation of testimony.   Hence, with all Courts, it has been a *desideratum*, wherever practicable, that witnesses should be examined orally in open Court, before the world, in the presence of the parties, where every possible facility of cross-examination can be had.   This mode gives promise of attaining the end of evidence, which is the ascertainment of truth in facts.   But this is not practicable always, and in many cases where practicable, the production of a witness in Court would be attended with such inconvenience to him, as to make the duty of appearing to testify, an excessive burden.

In consideration of these things, our law authorizes the examination by commission, in civil causes, of witnesses who reside out of the State, or out of the county in which his testimony may be required.   Witnesses may be examined too, by commission, in other instances and on other accounts, by special act.   But I refer now to the general rule, as expressed in the Act of 1799. In our own States, the taking of testimony by commission, to be used particularly in Courts of Law, is regulated by Statute : so, also, in England.   And it is remarkable with what earnest zeal, the Legislatures seem to have labored to secure the impartial and equal execution of these commissions.   For example, the character of the commissioner is defined, as judge, magistrate, examiner, or solicitor; the place of execution must be named—the time designated—notice of time and place must be given to the adverse party—the personal attendance of both parties required—the right of cross-examination allowed, and the testimony to be written down in the words of the witness. These are precautions prescribed, if not in all, yet in many of the States of our Union.   And in addition, the utmost care and particularity are required in the return of these commissions. Nor are all these precautions unmeaning things ; their significance is well understood, when it is recollected how easy a thing it is for testimony thus taken, to be perverted ; how easy a thing it is to shape a question so as to elicit an answer, favorable or unfavorable; to give to an unsuspecting or uninformed witness an improper, even though it be an involuntary bias.   A single word, perhaps not well understood by the witness, may change entire-

Tillinghast, Stark & Co. *vs.* Walton.

ly the general intent and meaning of the testimony. Our own Legislature seems to have been unimpressed with the importance of these things. They have taken none of these precautions, but left the execution of the commission pretty much with the party who takes it out. In view of this fact, and in consideration of the necessity we feel of an impartial execution of so delicate a trust to the ends of justice, we are constrained to adopt as stringent a rule as principle and authority in analagous cases elsewhere, will authorize.

[2.] If the relation of the Commissioner to either party is such as to warrant an inference that he may act under a bias in favor of either party, then he is incompetent, and testimony taken by him ought to be rejected. We do not place the incompetency of the Commissioner upon the fact that he did act under a bias: he may, as in this case, be wholly free from any suspicion of improper conduct.

[3.] We put his incompetency upon the relation he bears to the parties, or one of them. Mr. Lee, the Commissioner in this case, was the clerk of counsel for the party who required the evidence, acting as his servant, under a salary. We think his relation to the party, through his employer, Col. Holt, who was counsel for that party, was such as to warrant the inference, that he might be biased in the execution of the commission in his favor.

The question is not whether he, Mr. Lee, was in fact biased, on account of his relationship to the party, for it might be true, (as it is true in this case,) that the character of both Mr. Lee and of his employer, Col. Holt, is such, as utterly to preclude the idea of any improper conduct on their part: but the question is whether *any man*, having such relation as he and Col. Holt bore to the party, might not act unfairly in the execution of a commission; might not act under a bias. The rule must be general. The authority upon which I rely, is mainly drawn from cases arising under the practice in Chancery, of examining witnesses by commission, issuing out of that Court. In England, the Chancery practice originally required the Commissioners to be *indifferent* persons. 2 *Dan. Ch. Pr.* 1076. By the order adopted in the English Chancery, in 1845, the Commissioners are required to be either barristers or solicitors, not employed in the cause. 2 *Dan. Ch. Pr.* 1073. The cases herein referred to, occurred for the most part, under the old rule.

The common exceptions to Commissioners are stated to be

these, " that he is of kindred, allied to the party for whom he is named, that he is master to the party, his landlord or partner— that he hath a suit at law with the party adverse to him, for whom the Commissioner is named, or is *of counsel*, or is *attorney or solicitor, or follower of the cause on one side*, that the party is indebted to him, *or any other apparent cause of partiality, or siding with either party.* Lord *Moyston vs. Spencer*, 6 *Beav.* 135. *Prac. Reg.* 121. 2 *Dan. Ch. Pr.* 1076--7. *Hind*, 305. *See also*, 1 *Tyler*, 344. 14 *Pick.* 285, *note.* 5 *N. Hamp.* 94. 2 *Green.* 408. 13 *Pick.* 441. 13 *Pick.* 279.

By some of the authorities above, counsel for a party is excluded ; the authorities very generally exclude counsel. See also to this point, *Fricker vs. Moore, Bunb.* 289. *Selwyn's case*, 2 *Dick.* 563. 1 *Seamb.* 513.

In *Gordon vs. Gordon*, Lord Eldon said : " Where the solicitor in the cause has acted as Commissioner, the Court suppresses the depositions." 1 *Swanst.* 166.

The policy which excludes a solicitor of a party, is founded in a just apprehension, that from his relationship to him, he will not deal fairly by the adverse party. This policy ought also to exclude his clerk, one who occupies to him the legal relation of servant, and is presumed to be under his influence, or interested in his behalf. Accordingly, it has been so decided. *Cook vs. Wilson*, 4 *Mad.* 380. 2 *Dan. Ch. Pr.* 1076.

Nay farther, it has been held that if the clerk of a solicitor in the cause, has been employed as clerk to the Commissioners, the depositions will be suppressed. *Newton vs. Foot*, 2 *Dick.* 793. 2 *Ch. R.* 393, *S. C. Cook vs. Wilson*, 4 *Mad.* 380. See 5 *Beav.* 462. 2 *Dan. Ch. Pr.* 1077.

Let the judgment be reversed.