## Randle v. Bloomfield.

(Decided January 26, 1912.)

### Appeal from McCracken Circuit Court.

1. Principal and Agent—Real Estate Broker.—Where a real estate broker undertakes to furnish a purchaser, he is bound to act in good faith in presenting a person who is ready, able and willing to perform his part of the contract, according to the terms proposed; and, if he does furnish such a purchaser, he is entitled to his commission for making the sale.

2. Same—Abandonment of Contract—Quantum Meruit.—Where a real estate broker opens negotiations for the sale of land to a possible purchaser, but the seller withdraws the property from the market before the sale is completed, the broker, although he can not recover his commission under the contract, he may, nevertheless, recover damages upon a quantum meruit for the value of his services rendered up to that time.

MILLER & MILLER for appellant.

HENDRICK & CRICE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming upon the appeal and upon the cross-appeal.

The appellee, Mrs. L. M. Bloomfield, owned a valuable tract of land, consisting of 70 acres, lying in the immediate neighborhood of the city of Paducah. On February 28, 1910, she entered into a written contract

with the appellant, S. T. Randle, a real estate agent of Paducah, whereby she sold to said Randle the sole right, for a period of nine months from the date thereof, to buy said tract of land for the sum of $10,000.00, of which $5,000.00 was to be paid in cash, and the balance in one and two years thereafter, or upon such other terms as might thereafter be agreed upon. Another provision of the contract provided that Mrs. Bloomfield should pay Randle a commission of all over the purchase price for his services, and if Mrs. Bloomfield should sell the property, or any part thereof, to a purchaser within the time stated, who had not been secured by Randle, or as a result of his advertising, she had the right to do so; and, in that case, Randle should be entitled to only one-half of the above commission. The contract was drawn by Randle, and is somewhat anomalous in its nature, in that it partakes of the double nature of an option and an agency. If it be treated as an option, it was without consideration, and subject to revocation at the pleasure of either party. Since the parties, however, treated it as a contract of agency, whereby Randle was employed to sell the land, we will so consider it.

Several of the prominent and leading citizens of Paducah had in contemplation the formation of a Country Club, and it was thought by some of them that the Bloomfield Place would be a desirable location. A few days after the contract was made, Mr. Wallace Weil met Mrs. Bloomfield and asked her if she would sell her place, whereupon she instructed him to see Mr. Randle, her agent. Weil called upon Randle, who agreed to sell the 70 acres for $12,500. Weil reported the result of his conversation to Mr. J. L. Friedman, who was one of the leading men in the proposed organization of a Country Club, whereupon Friedman directed Weil to close the trade; and, in doing so, Friedman gave Randle a check for $200, whereupon Randle wrote and signed the following receipt:

"Paducah, Ky., March 8th, 1910.

"Received of Chas. K. Wheeler, trustee, $200, as part payment on the Bloomfield property, consisting of seventy acres, with improvements, lying on the Blandville road, as map attached.

"The purchase price of the aforesaid seventy acres is, $12,500. The payments to be made as follows: $5,000 cash, the balance in one and two years, with 6 per cent. interest with lien attached, payable on or before. The

above $5,000 is to be paid within a week from date; $200 aforesaid mentioned to be deducted from the above $5,000.''

"S. T. RANDLE, Agt.,
"For MRS. J. W. BLOOMFIELD.''

"Wheeler, who was named as trustee, was not consulted about the payment of the money, or the form of the receipt, although he previously had been in consultation with the other gentlemen upon the subject of forming a Country Club. The plan seems to have been Friedman's, by which he paid this earnest money to hold the property until the club could be organized and take the property off of Friedman's hands, and reimburse him for the money he had paid. The Country Club was never organized; but shortly after the payment of the $200 Randle delivered certain deeds for the Bloomfield property to Wheeler for the purpose of having him prepare the deed. Wheeler pointed out to Randle that the deeds were not sufficiently specific to enable him to properly draw a deed, one of them being a tax title, and the matter rested in this position for a few days. Shortly thereafter Friedman called at Wheeler's office and told him he understood that Mrs. Bloomfield did not wish to sell her place, whereupon Wheeler talked with Mrs. Bloomfield over the telephone; and it appearing that Mrs. Bloomfield had some objections to selling the place, which were satisfactory to her, Wheeler and Friedman thereupon promptly said to her that they would have nothing further to do with the proposed purchase, and would not complete it.

On April 29, 1910, appellant brought this suit against Mrs. Bloomfield for $2,500, which he claimed as his commission for selling her land. He subsequently amended his petition, stating that he had sustained damages in the sum of $2,500, for which he prayed judgment.

The ground of appellant's action is, that he found a purchaser ready, willing and able to buy the land, and that he entered into a valid contract to sell the land upon the terms agreed upon between the appellant and the appellee, and that after he had secured the purchaser, the appellee wrongfully declined to execute the deed. The appellee denies that appellant found an eligible purchaser, because the trustee for the alleged purchasers was not authorized to act for them, or to enter into a contract to bind them, and that the purchasers for whom,

it is claimed the trustee, Wheeler, assumed to act were not, and could not, be designated or identified, and were not therefore ready, willing or able to perform the contract. It is further relied upon as a defense, that Wheeler and those for whom he assumed to act, were not personally liable to pay for the land, as there was no contract binding them to do so; and further, that the alleged trustee refused and declined to carry out the trade before the appellee took any action in reference thereto; whereupon appellee was released from any obligation to pay the the commission, or any part thereof. Upon the trial of the case by the court, it gave a judgment for the plaintiff for $350. Randle being dissatisfied with the amount of his recovery, prosecutes this appeal; and Mrs. Bloomfield has taken a cross appeal, claiming that the circuit judge erred in giving any judgment whatever against her.

The law is well settled, that where a real estate broker undertakes to furnish a purchaser, he is bound to act in good faith in presenting a person who is ready, able and willing to perform his part of the contract, according to the terms proposed; and, if he does furnish such a purchaser, he is entitled to his commission for making the sale. Coleman v. Meade, 13 Bush, 358; Higgins v. Miller, 109 Ky., 312.

The court below evidently decided this case upon the theory that appellant had never furnished an eligible buyer before Mrs. Bloomfield announced her intention of not selling her land; and as she had thereby defeated the carrying out of the contract, whereby appellant might have earned his full fee, appellant was entitled to a reasonable compensation for his services up to that time.

We are of opinion that this was a fair and reasonable conclusion to be drawn from all the facts of the case, since the negotiations had not taken such a final shape as would have enabled either side to enforce a sale at the time Wheeler and Friedman notified Mrs. Bloomfield that they had abandoned the project. There seems to have been a general idea, under which no particular person was liable, that the property was to be bought for the Country Club; but there was no such organization. And when Friedman paid the $200, and Randle wrote a receipt to Wheeler as trustee, it could not be claimed that Wheeler was really trustee for any designated persons, or for any definite or specific purpose; and cer-

tainly he could not have been held liable under the receipt written by Randle, and with which Wheeler had nothing to do. The cash payment of $5,000 was never paid, or tendered to any one, and it does not appear who was to take the title as purchaser, and assume the payment of the deferred purchase money. Certainly, Randle could not so bind Wheeler, by merely designating him as trustee in a receipt given to Friedman. In short, the negotiations looking toward a sale of the land were in an embryonic state, which might have resulted in the formation of the Country Club, and the purchase by it of the property in question, but it did not so turn out. Since, however, the negotiations never reached an enforcible stage of perfection, but were abandoned in their early stages, it appears that appellee's acts, in withdrawing her property from sale during the life of the contract, merely resulted in a defeat of appellant earning his commission under the terms of his contract. Appellant at no time, during the life of the contract, performed his part of it by furnishing an eligible purchaser. If, however, one party to a contract abandons it, and thereby prevents the other party from carrying it out and earning the profit that he would thereby have made, the party abandoning the contract is liable in damages upon a quantum meruit. Such is the case before us; and applying this principle to the facts of this case, we are of opinion that the judgment of the circuit judge was right.

The judgment is affirmed upon the appeal and upon the cross appeal.