## Gore v. Griffith Realty Company.

### (Decided October 13, 1914.)

### Appeal from Daviess Circuit Court.

Brokers—Compensation and Lien—Performance of Contract of Employment.—A real estate broker cannot recover commissions unless he produces a purchaser who is ready, able and willing to purchase at the price and upon the terms proposed by the owner. So where the owner offers a farm of 160 acres for $8,800 and the proposed purchaser has it surveyed and finds only 139 2-5 acres and offers for the farm $7,667, such purchaser is not ready, able and willing to purchase at the price proposed by the owner, and the brokers are not entitled to commissions, the owner having acted in good faith in describing the farm as a 160-acre farm, her deed having called for that acreage, and no one connected with the matter having any intimation that there were less than 160 acres until the farm was surveyed.

LITTLE & SLACK for appellant.

C. W. FINN for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

On October 23, 1911, Annie Gore entered into a contract with J. W. Griffith and H. C. Newsome, doing business as the Griffith Realty Company, by the terms of which she granted to the company the exclusive right to sell a farm of one hundred and sixty acres in Daviess County at the price of $11,200, and agreed to pay the realty company four per cent of the sale price as compensation for finding a purchaser therefor.

Appellees made efforts to find a purchaser for the farm, and among others showed it to one F. E. Birk, who owned and lived on an adjoining farm. Birk was not willing to pay $11,200 for the farm, but made a written offer on it, which reads as follows:

"I hereby make the offer of $8,800 on the farm of 160 acres about three and one-half miles from Owensboro owned by Mrs. Annie Gore, and agree to pay in cash $1,000 at the time the deed is delivered from Mrs. Gore, and also $800 on February 1, 1912, and the remaining $7,000 to be paid anywhere from five to seven years. It is understood that Mrs. Gore is to furnish a deed satisfactory. Witness my hand this 21st day of November, 1911. (Signed) F. E. Birk."

On the day this written offer was made by Birk, Newsome informed Mrs. Gore that, after investigation, the realty company had found it would be impossible to sell the farm at the price she was asking, and asked her if she would consider a sale at the price of $8,800. She then executed another writing, delivering same to the realty company, which reads as follows:

"I hereby agree to dispose and deliver my farm of one hundred anl sixty acres three miles southeast of Owensboro, Ky., containing one hundred and sixty acres, located on the Veach Road, for $8,800, and agreed to accept in cash $3,000, and the balance as follows: 1, 2, 3 and 4 years, equal payments, drawing 6% from date. It is further agreed that I will furnish a deed satisfactory to the parties purchasing same. Witness my hand this 21st day of November, 1911. (Signed) Annie Gore. R. C. Coffman."

The R. C. Coffman who signed this contract is a son of Mrs. Gore, and was not of age at that time. She had two other children, W. P. Coffman and W. A. Shackelford. Mrs. Gore owned only a life estate in the farm, her children being the remaindermen.

While the negotiations were pending which led up to the execution of this second writing, Newsome became aware of the nature of Mrs. Gore's estate, of the fact that her son, R. C. Coffman was not of age, and of the fact that she and her husband, E. H. Gore were living separate and apart from each other. She asked Newsome whether her husband ought to join in the contract and was assured by him that it was unnecessary.

On the next day after this contract was executed, Newsome went to each of the children of Mrs. Gore and obtained their signatures to a contract which reads as follows:

"I hereby agree to accept the offer of $55.00 per acre for the farm of 160 acres, more or less, three miles southeast of Owensboro, Kentucky, located on the Veach Road, known as the Guess farm, now owned by the Coffman heirs, and agree to accept $3,000 in cash and the balance as follows: 1, 2, 3 and 4 years, equal payments, drawing 6% interest from date until paid and a lien retained on said land to secure the payment of same. It is further agreed that the heirs of said land will furnish a satisfactory deed to the parties purchasing same; the purchaser being Mr. Frank Birk, whose post office address is Owensboro, Ky. Witness our hands this 22d

day of November, 1911. (Signed) W. P. Coffman, Mrs. W. A. Shackelford, W. A. Shackelford, R. C. Coffman.'' Mrs. Gore does not seem to have been consulted with reference to this writing, nor to have agreed thereto.

Birk was then informed that the terms of payment contained in his written offer were not satisfactory to Mrs. Gore, and he agreed to make the payments as indicated in the modified proposal made by her, i. e., $3,000 in cash and balance in one, two, three and four years; but, when he had an examination made of the title of the farm, he learned that there was some question as to the number of acres therein contained; and he had it surveyed. The measurement showed one hundred and thirty-six acres only. When Mrs. Gore was informed of this, she also had the farm surveyed, and her surveyor made it one hundred and thirty-nine and two-fifths acres. Birk then declined to pay $8,800 for the farm, and Mrs. Gore declined to accept less than that amount.

On December 21, 1911, the realty company brought this action against Mrs. Gore to recover commissions of four per cent. on $8,800. Upon a trial, the jury found a verdict for plaintiff in the sum of $306.68, being four per cent. on $7,667, the amount which 139 2-5 acres would have brought at $55 per acre. Mrs. Gore appeals.

1. It is well settled that a real estate broker can not recover commissions unless he furnishes a purchaser who is ready, able and willing to consummate the purchase at the price and terms proposed by the owner. Phillips v. Rudy, 146 Ky.. 784; Randle v. Bloomfield, 146 Ky., 421.

And the principal question presented upon this appeal is: Whether Mrs. Gore proposed to sell the farm in question for $8,800, or at $55 per acre. The purchaser produced by the realty company was willing to consummate the purchase only at the price of $55 per acre, and unless Mrs. Gore proposed to sell it on that basis, she is not liable for commissions.

It is shown by the record, and not claimed otherwise by appellee, that appellant, Mrs. Gore, did not know until after the contract was made and after the farm had been surveyed, that it did not contain one hundred and sixty acres; in fact, the deed by which it was conveyed to her and her children recites that acreage; and it is not contended that she acted in bad faith in stating that there were one hundred and sixty acres in the farm. At

the time the contract was signed by her there had been no intimation or suggestion upon the part of any one connected with the matter that there were less than 160 acres in the farm. Under this state of fact, the court will not say that the statement in the contract to the effect that the farm contained 160 acres was anything but descriptive.

And the statement of acreage being descriptive only, appellee company did not produce a purchaser who was ready, able and willing to consummate the purchase upon the terms and at the price proposed by the owner, when it produced a purchaser who was willing to pay $8,800 for the farm only in the event it contained 160 acres. Stripped of all circumlocution, Mrs. Gore asked $8,800 for the farm, and Birk offered $7,667. Appellee company was not, therefore, entitled to commissions. The trial court should have sustained defendant's motion to instruct the jury to find a verdict for her.

The fact that after this action was brought and while it was pending, Mrs. Gore, seemingly for the purpose of avoiding litigation, finally agreed to accept $7,667, and the claim of Birk that on account of her delay in obtaining the consent of her husband to a sale of the land Birk then declined to take it, is not material to the issues here involved.

Judgment reversed.