## T. W. Sandford & Company v. Waring.

(Decided November 27, 1923.)

### Appeal from Campbell Circuit Court.

1. Brokers—"Sale" where Broker Furnished Buyer Ready, Able, and Willing to Purchase.—Where broker furnished a responsible purchaser, ready, able, and willing to take the property at the price and upon the terms proposed, there was a "sale" within the meaning of a brokerage contract, providing, "No sale, no commission."

2. Brokers—When Entitled to Commission for Sale of Land.—Where a broker acting under employment to sell real estate in good faith procures and produces to his principal a purchaser willing, able,

and ready to take the property upon the terms offered by the principal, he is entitled to his commissions, although the sale be not consummated, provided the failure to consummate it is not due to any fault of the broker.

3. Brokers—Authorization to Broker to Sell with Acceptance of Purchaser Written Thereon Held Binding Contract.—A written authorization to a broker to sell certain lots for a certain sum, together with a writing thereon over proposed purchaser's signature, "I accept the above proposition provided clear title is given," constituted a valid contract of sale binding upon both owner and purchaser, the authorization constituting an offer to any of the buying public that the broker might discover and tender as a purchaser willing, able and ready to take the property upon the terms proposed.

S. D. ROUSE for appellant.

W. A. BURKAMP for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action was brought in the court below by the appellant, Thomas W. Sandford, a real estate broker doing business as T. W. Sandford & Company, seeking to recover of the appellee, Robert C. Waring, $1,050.00, alleged to be owing him by the latter as agreed commission upon the sale of four lots of ground in the city of Covington, made for him, as further alleged by the appellant, to one George L. Hill, July 7, 1921. The appellee filed a general demurrer to the petition as amended, which the court sustained. The appellant excepted to this ruling and refused to plead further. Whereupon the court entered judgment dismissing his petition, and from that judgment he has appealed.

It appears from the averments of the petition, as amended, that on June 27, 1921, the appellee placed the lots in question in the hands of the appellant for sale in accordance with the terms of the following writing:

"June 27, 1921.

"I hereby place the property numbers 31, 33, 35 and 37, West Pike street, Covington, Ky., with T. W. Sandford & Co. for a period of thirty days from this date for sale exclusive for the sum of thirty-five thousand ($35,-000.00) dollars, and will pay said firm the regular commission for selling said property. No sale, no commission.　　　　　　　"(Signed) ROBERT C. WARING."

That on July 7, 1921, and well within the thirty days' time allowed him by the above writing for making a sale of the real estate therein described, the appellant found and tendered to the appellee, in the person of George L. Hill, an admittedly responsible purchaser of the property, whose written acceptance as such purchaser of the offer and terms of its sale as contained in the written authorization from the appellee to the appellant and agreement to comply therewith, was appended by him to that instrument in the following words:

"I accept the above proposition provided clear title is given.              "(Signed) GEORGE L. HILL.

"July 7, 1921."

The writing and attached acceptance referred to, marked as an exhibit, was filed with and made a part of the petition.

It further substantially appears from other averments of the petition as amended that George L. Hill, purchaser of the real estate, immediately expressed to the appellee his ability and readiness to comply with his contract of purchase in accordance with its terms as set forth in the written authorization from the appellee to appellant and his (Hill's) written acceptance of same, and offered to do so, which offer was accompanied by a request from him to the appellee that he consummate the contract by the execution and delivery to him of a deed conveying him a valid title to the real estate in question, but that the latter failed and refused to do so. There is no controversy as to the fact that the "regular commission" which the written authorization provides should be received by the appellant for selling the property is, or would be, three per cent of the consideration paid or to be paid for it by the purchaser procured by him; and as the consideration agreed to be paid by the purchaser was $35,000.00, three per cent thereof would be $1,050.00, the amount of commission claimed in the petition.

The judgment under review does not indicate the ground or grounds upon which the circuit court sustained the demurrer to the petition, but we infer from what is said in the brief of counsel for appellee that it was sustained upon the theory that the consummation by the appellee and the purchaser of the sale that appellant made of the real estate under the authority conferred by the writing in question was necessary to en-

title the latter to the commission sued for; and that as the sale of the property was never consummated, and this fact appeared from the petition, it failed, in the opinion of the court, to state a cause of action.

We do not give the word "sale" as used in the writing executed to the appellant by the appellee the meaning attributed to it by the court below, but think it was used in its ordinary and popular sense and as meant and applied in other like contracts that have been construed and passed on in this and other jurisdictions. To effect a sale in the meaning of that word as used in the written agreement and authorization of sale it was only necessary that appellant, as the real estate broker charged by it with that duty, procure and produce to the appellee as owner of the real estate therein described, a responsible purchaser, able, willing and ready to take the property at the price and upon the terms therein proposed, and this he did.

It could not have been contemplated by the appellee, owner of the property proposed to be sold, or by appellant, the broker to whom its sale was entrusted through the instrumentality of the writing executed by the one to the other, that its sale when made by the latter should be consummated by an observance of all the formalities required to pass the title, or even such of them as would make the contract of sale actually enforceable as between the owner and purchaser, in order to entitle the broker to his commission; and as there is nothing in the language of the writing that indicates such was the understanding or intention of the parties, we are authorized to infer that the word "sale" as employed therein was not used or intended to be understood in its technical sense but in its ordinary and popular sense; and such, according to the authorities, seems to be the sense in which the word is ordinarily regarded when used in contracts whereby real estate is placed by the owner with a real estate broker for sale, and in such cases the courts seem to have generally held that, in the absence of a provision in the contract giving it a different meaning, the sale of the real estate is made by the broker and, so far as he is concerned, completed when he finds and presents to the owner a purchaser ready, able and willing to take the property upon the terms proposed by the former. Humphries v. Smith, 5 Ga. 340 (83 S. E. 248); Steinberg v. Mindlin, 114A (N. J.) 451.

An excellent, and we think, correct statement of the law controlling this question is contained in 4 R. C. L. 310, wherein it is, in part, said:

"Whether failure to complete the contract or transaction negotiated has any bearing upon a broker's right to be compensated for his services, depends primarily upon the terms of his employment. While there are some decisions to the effect that there must be an actual performance of the contract negotiated to entitle a broker to his commissions, even though the contract of employment is silent upon the point, the authorities are practically unanimous in holding that unless the broker and his employer have expressly stipulated to the contrary the broker is entitled to his compensation upon the completion of the negotiations he undertook irrespective of whether or not the contract negotiated is ever actually consummated, so long as the failure to carry it through to a successful completion is not due to any fault of the broker. This is true whether the failure to complete the contract in question is due to the default or refusal of the employer, or to that of the party procured by the broker."

It will be found that the controlling legal principles announced in the statement, *supra*, are supported by twenty or more cases, from practically as many different jurisdictions, cited in the footnotes. There is, however, little need for our looking to other sources or jurisdictions for light to guide us in arriving at a proper solution of the questions presented for consideration by the present appeal, as such light is furnished by numerous decisions emanating from this jurisdiction, which will be found to be in accord with the authorities, *supra*. Murphy v. Sawyer & Warford, 152 Ky. 645; Randle v. Bloomfield, 146 Ky. 421; Phillips' Exor. v. Rudy, 146 Ky. 780; Giltner v. McCombs P. and Refining Co., 190 Ky. 601; Carter v. Hall & Martin, 191 Ky. 75; Clift v. Harp, 191 Ky. 296; Fowler v. Thomson, 193 Ky. 593; Renick v. Mann, et al., 194 Ky. 251. These cases all hold that where a broker acting under employment to sell real estate in good faith procures and produces to his principal a purchaser willing, able and ready to take the property upon the terms offered by the principal, he is entitled to his commissions, although the sale be not consummated, provided the failure to consummate it is not due to any fault of the broker. These cases also lay down the rule that in the absence of

an express stipulation in the contract of employment requiring the consummation of the sale negotiated by the broker, in order to entitle him to his commissions, the only service required of him by his employment will have been performed when he procures a purchaser for the property willing, able and ready to take it upon the terms proposed by the employer.

In Renick v. Mann, *supra*, it was held that the broker is entitled under the rule stated to his commissions even where the sale made by him fails because of a defect in the employer's title to the property, unless at the time of contracting with the latter to make the sale for him the broker has knowledge of such defect of title, or of such facts as would be sufficient to put a reasonably prudent person on inquiry, which if followed with reasonable diligence would bring to him such knowledge; in which state of case he would not be entitled to compensation for negotiating the sale, unless it was the intention of the parties that the employer should subsequently perfect his title for the purpose of completing the contract of sale. This opinion cites in support of the conclusion thus expressed a paragraph of like import contained in 4 R. C. L., p. 213, and quotes with approval the following excerpt from the opinion of this court in Womack, et al. v. Douglas, 157 Ky. 716:

"It is well settled that a party who makes a contract like this is liable for the whole of the compensation agreed to be paid, although he did not own the land he placed with the broker for sale, or only owned an interest in it, and was unable to carry out his contract because he did not own it, or because its other owners would not consent to the sale, although there might be an exception to this rule if the broker had knowledge of the fact that the person making the contract was not authorized to do so. Rounds v. Alee, 116 Ia. 345; Oliver v. Morawitz, 97 Wis. 332; Gorman v. Hargis, 6 Okla. 360."

The contract in the case at bar contains nothing that cannot readily be understood. It imposed no conditions upon the sale contemplated of the property therein described other than that the sale must be made at the price named and within thirty days; and that if there was no sale made of it by the appellant the appellee would be relieved of any liability to him for the stipulated commissions. It contains no provision that required the sale made of the property by appellant to be completed or

consummated, in order to entitle him to the commissions it provides shall be paid him by the appellee for making it; and in the absence of such a provision in the contract, the only duty or obligation it imposed upon the appellant was performed and his commission earned when he, within the thirty days therein stipulated, found and tendered to the appellee a purchaser willing, able and ready to take the property upon the terms offered; and this being so, the failure of the appellee, owner of the property, to carry out the contract with the purchaser will not relieve him of the liability for the appellant's commissions.

The appellee's contention that the sale as effected by the appellant did not constitute an enforceable contract, as between the owner and purchaser of the property, is devoid of merit. The contract under which the sale was made is not only an authorization from the owner to the broker to sell the property, but also a written offer, signed by him, to sell it upon the terms therein stated, which, together with its acceptance by the purchaser procured by the broker, written over his signature on the same writing, constitutes a valid contract of sale, binding upon both owner and purchaser. The writing in question, as expressed and signed by the appellee as owner of the property, was an offer, not to a particular class, but to any person of a particular class, viz., any of the buying public that the appellant might discover and tender to the owner as a purchaser, willing, able and ready to take the property upon the terms proposed, and the acceptance of the offer by any one of that class, though not in writing, constitutes a contract in the meaning of the law. Indeed, the method thus adopted is one generally employed in putting real estate on the market for sale; and that contracts thus made are approved by the law and enforced by the courts is clearly established by the following authorities in addition to those previously cited: 13 C. J., p. 273, section 70; Alford v. Wilson, 95 Ky. 506; Evans v. Stratton, 142 Ky. 615.

As it appears from the averments of the petition as amended, which are admitted by appellee's demurrer, that the appellant, as required by the written authorization from the appellee, procured and tendered to him a purchaser willing, able and ready to take the property therein offered for sale, at the price and upon the terms

proposed, and thereby effected its sale by a contract enforceable, as between the appellee and the purchaser, the conclusion cannot be escaped that a cause of action was stated by the petition, as amended, for the recovery by the appellant of the commissions sued for. It therefore follows that the action of the trial court in sustaining the demurrer to the petition must be declared reversible error.

For the reasons indicated the judgment is reversed and cause remanded, with directions to that court to set it aside, overrule the appellee's demurrer to the petition, and allow such further proceedings in the case as may not be inconsistent with the opinion.