## Kelly v. McDowell.

(Decided June 19, 1925.)

### Appeal from Fayette Circuit Court.

1. Tenancy in Common—Broker Fulfilling Terms of Employment Agreement Held Entitled to Commission, Though Defendant Had no Authority.—Where one of several owners agreed with broker that if purchaser were secured satisfactory to him he would recommend sale to his brother, who was trustee for other parties in interest, and sale would be consummated on brother's approval, and where broker, pursuant to agreement, found purchaser who made cash offer which defendant and his brother said would be satisfactory with certain modifications, broker held entitled to rely on statements of defendants as to ownership and authority to sell, and was therefore entitled to commission on acceptance of modifications by purchaser, notwithstanding fact that consent of all parties in interest was necessary to consummate sale.

2. Tenancy in Common—Notice as to Common Ownership Held Not to Defeat Right to Commission, Where Broker Relied on Representations of One Owner as to Authority to Act.—Where broker relied on representations of one owner as to his own and his

brother's authority to act for other parties in interest, constructive notice, through recording of will, that conveyance of property would have to be joined by others, held not to defeat broker's right to rely on assurances by the one as to his authority; such ownership not preventing one of parties from obtaining authority to act for others.

3. Brokers—Owner's Statement that Purchaser's Offer was Acceptable on Certain Conditions Held Not to Require More than Acceptance of those Conditions to Complete Brokerage Contract.— Where broker employed by one of joint owners secured purchaser, and owner told broker that contract would be complete on acceptance of certain conditions, acceptance of conditions by purchaser held to effect completed brokerage contract, and not to require resubmission of purchaser's acceptance.

FRANKLIN, TALBOT & CHAPMAN for appellant.

WILSON & HARBISON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

"Ashland," formerly the home of Henry Clay, now an addition to the city of Lexington, was owned by the McDowell family. Under the will of Henry C. McDowell, deceased, it was devised to H. C. McDowell, Jr., as trustee, he to have full charge and management of it, but not to have power to sell or mortgage it, "unless in his judgment it be advisable to sell and reinvest the proceeds in real or personal property, and unless all of his brothers and sisters then living shall concur in and agree to such sale or sales, which concurrence shall be evidenced by their joining with him to the execution of the conveyance or conveyances. The execution of such conveyance by my children then living shall be merely to evidence their concurrence in said sale or sales."

There were six brothers and sisters, of whom H. C. McDowell lived at Lynchburg, Va., and W. A. McDowell at Lexington, Ky.

This is a suit against W. A. McDowell to recover a broker's commission for procuring a purchaser in the sale of that real estate. The plaintiff, Henry Kelley, alleged that "on the 20th of May, 1919, he made a parol contract with W. A. McDowell to the effect that if the plaintiff would find a purchaser or purchasers (for the land above referred to) who would offer a price which the defendant (W. A. McDowell) would recommend to his brother, Henry C. McDowell, . . . and which

his brother, Henry C. McDowell, would approve of, that there would be a sale thereof at said price, and plaintiff's commission should be 3% of the amount of the purchase money;" that he performed his part of the agreement and found purchasers who offered for the property a price, to-wit, $149,902.00, which defendant could and did recommend to his brother, Henry C. McDowell, and which defendant's brother, Henry C. McDowell, approved, but with seven written conditions to be accepted by the purchasers in writing, and which the purchasers in writing immediately accepted; that the purchasers so found were ready, able and willing, and offered to pay in cash, the price so offered by them and so recommended by defendant and approved by H. C. McDowell, but that defendant violated his contract by failing to pay his commissions thereon, which amounted to $4,497.06, or any part of it.

The answer consisted of a traverse and an affirmative plea. The latter set out the above quoted provisions from the will of H. C. McDowell, Sr., and alleged that such will had been duly probated and recorded in the Fayette county clerk's office, and that plaintiff had notice thereof; that defendant had no authority to make a sale of the property, and that H. C. McDowell, as trustee, had no such authority except with the consent and concurrence of the five brothers and sisters, this to be evidenced by their joining with the trustee in the execution of the deed; that these facts were fully explained to the plaintiff at the time of the negotiations; that the agreement with him was, that if the plaintiff secured a purchaser or purchasers for the property, at a price and on terms accepted by the trustee, with the full agreement and concurrence of the other beneficiaries named, his compensation should be 3% commission on the amount of the purchase price, to be paid by the trustee (not the defendant). He further alleged that the plaintiff never found a purchaser or purchasers at a price or upon terms which were approved and accepted by the parties, but, on the contrary, before the proposition could be submitted to the trustee for approval or disapproval, and before defendant took any final action in the matter, some of his brothers and sisters informed him that they would not agree to a sale of the property at the price, or assent to or concur in a sale, and that the negotiations conducted by plaintiff did not result in procuring such purchaser.

The reply controverted this. In a separate paragraph it was alleged that the plaintiff did not know the conditions in the will of H. C. McDowell, deceased, that after this offer was made the defendant represented to plaintiff that he had heard from his brother, H. C. McDowell, and such offer was acceptable to him with seven modifications, and in furtherance of his representations produced a paper headed Lynchburg, Va., and reading as follows:

"To Messrs. E. C. McWhorter, W. H. Porter, R. S. Webb, Jr., Jacob Speyer, R. Denton, L. L. Roberts, Hogan Yancey, C. L. Hanks.

"Gentlemen:

"Referring to your offer dated June 12th, 1919, proposing to purchase about 100 acres of 'Ashland,' we beg to say that we are willing to accept said offer subject to the following conditions:

"(1)    The property to be conveyed shall not include lots Nos 7, 8, 9 and 10 of block 2, as shown on the Olmstead map. In other words, the line from East High street shall run only to the northern line of lot No. 11 of said block 2 on the Olmstead map, and the line of the property to be conveyed shall then run with the line common to lots 10 and 11 of said block 2, and thence on the same degree to the center of Hanover avenue, the purpose being to exclude from sale all lots now fronting on the west side of Hanover avenue as far as same is now paved on said west side.

"(2)    Subparagraph (h) of paragraph 4 of your proposition shall be extended by adding thereto the following words: 'Also for the benefit of the purchaser and owner of any lot or lots within the areas affected by said conditions, as well as for the benefit of second parties, their heirs, vendees and assigns.'

"(3)    All taxes, including state, county, city and district taxes, shall be assumed and paid by the purchasers of said property (described as 'first parties' in the proposition), assessed or assessable in the year 1919 or thereafter; the said first parties shall also assume and be liable for any and all local improvements, assessments or taxes, which may be imposed upon said property or any part thereof or for which said property may be liable after the ac-

ceptance of the modified proposition, as indicated in paragraph (7) below.

"(4)   If the first parties or the corporation, which they propose to organize and which it is proposed to vest the title to said land, shall find the title to the property open to any objection whatever, the said trustee may, at his election, declare the contract at an end and thereafter it shall be of no force or effect whatsoever.

"(5)   In the event the title is found acceptable to you (first parties) we (second parties) are to have a reasonable time after being thus advised, within which to execute and deliver the deed upon payment of the entire consideration in cash.

"(6)   The words 'or before' at the end of the third line of subparagraph (3) of paragraph 3 of your offer are to be striken out, but we agree to deliver possession before March 1, 1920, if Thornton surrenders possession to us prior to said date.

"(7)   Your acceptance of the foregoing modifications of the said offer, in writing and signed by you, shall make a binding contract between us.

"Trustee under the will of H. C. McDowell, deceased.

By_____Atty.-in-fact.

By_____Atty.-in-fact.

"We, the undersigned, hereby assent to and accept the foregoing modifications of our offer of the 12th of June, 1919.

"Witness our hand this _____ day of June, 1919.

_____
_____"

The defendant had all along represented to him that he and his brother had authority to act for the other persons in interest, and that he had authority to sign for his brother, and further represented to him that

the acceptance of these modifications in writing by the purchasers should make a binding contract between the purchaser and seller; that relying on these representations he immediately procured the signatures of the purchasers to the writing mentioned and thus performed the conditions of the contract and that defendant is thereby estopped to allege in his answer, (1) that he had no authority to make a sale of the land in question; (2) that plaintiff never obtained an offer that was approved by the defendant or by the trustee.

The court sustained a demurrer to this reply and plaintiff declining to plead further his petition was dismissed and he has appealed.

(1) The answer is not a plea of confession and avoidance. It puts in issue the contract claimed by plaintiff as well as its acceptance and sets out defendant's version of the agreement and negatives its consummation; the condition of the title and defendant's authority to act in the premises being pleaded as an inducement, the agreement pleaded being contradictory of the facts relied on as an estoppel. Certainly defendant could plead and prove all pertinent facts in support of his version of the contract, and as to this the plea of estoppel would be no more than an affirmative traverse.

(2) Plaintiff's version of the contract presents a different angle. Assuming the truth of the allegations as we must on demurrer, he was employed to procure a purchaser who was satisfactory to defendant and approved by his brother, Henry. He did find persons who made a cash offer, presumably in writing, for $149,902.00. Defendant informed him that with certain modifications that offer was satisfactory to him and his brother and gave to him a writing embodying these modifications, assuring him of the authority of himself and brother to act for the other parties in interest and of his authority to sign for his brother as trustee and telling him that when these written modifications were signed by the purchasers it would be a binding contract of sale; that plaintiff relied on this and immediately procured such signatures, there being no intimation that this proposition was withdrawn.

If these facts are true, it seems clear that defendant's liability would attach when the modifications of the original offer were signed by the purchasers. It is true that the alleged contract was unilateral and imposed no duty upon the plaintiff, and that the defendant was not

bound thereby unless and until plaintiff had procured a purchaser that was satisfactory to him and approved by Henry, but when this was done liability for commission was fixed.

The proposed purchasers were not personally objectionable and as they made a cash offer there was no question as to their being ready, able and willing to pay. The original offer, together with the written modifications, identified the property, and fixed the price and the terms upon which plaintiff was authorized to find a purchaser, and upon doing this his undertaking was complete.

Plaintiff was a broker, not a purchaser, hence he was not interested in the title. In this contract defendant dealt as a principal, and plaintiff was not put on inquiry as to his authority to bind the other parties, unless he had notice of the joint ownership of the property, and even then he could rely on defendant's statements in reference thereto.

It is insisted, however, that as the will was recorded in the Fayette county clerk's office, plaintiff had constructive knowledge of it and of the condition that the concurrence of the joint owners in the sale was to be evidenced by them joining in a deed of conveyance; also that the writing copied in the reply shows that it was intended for that instrument to be signed by all the parties; that this writing has the force of an exhibit and should control any contradictory averments in the pleading, and, therefore, plaintiff may not deny knowledge of the conditions of the will. Conceding this principle, we do not see how it affects the question of estoppel. It is true that if plaintiff knew these facts the contract would imply that all of the parties should concur in the acceptance of the offer, and this would be necessary to entitle him to commissions, unless in the contract it was provided otherwise. But the condition in the will did not prevent defendant from procuring legal authority to act for the other parties, and if he represented to plaintiff that he had such authority the latter could assume that he had a power of attorney or other legal authority.

It is argued, however, that the negotiations were in the nature of a continuing offer which contemplated the modified offer being accepted in writing and again presented to Henry and that the statements were not representations of existing facts but an assurance of a future approval, and therefore not the subject of an estoppel.

We are not impressed with this. To make a binding contract of sale between the seller and purchaser would require future action, that is, signing by the seller, but a contract to find a purchaser at a price and on terms already fixed by the sellers requires no further action upon the part of the latter, and if such purchaser is procured before the offer is withdrawn the brokerage contract is completed.

The general principles relating to brokerage contracts are well settled in this state and are elaborately discussed and many authorities cited in Sanford & Co. v. Waring, 201 Ky. 169, thus:

> "These cases also lay down the rule that in the absence of an express stipulation in the contract of employment requiring the consummation of the sale negotiated by the broker, in order to entitle him to his commissions, the only service required of him by his employment will have been performed when he procures a purchaser for the property ready, willing and able to take it upon the terms proposed by the employer."

In Renick v. Mann, 194 Ky. 251, it was held that the broker was entitled under the rule stated to his commissions even where the sale made by him fails because of a defect in the employer's title to the property, unless at the time of contracting with the latter to make a sale for him the broker has knowledge of such defect of title, or of such facts as would be sufficient to put a reasonably prudent person on inquiry, which if followed with reasonable diligence would bring to him such knowledge; in which state of case he would not be entitled to compensation for negotiating the sale, unless it was the intention of the parties that the employer should subsequently perfect his title for the purpose of completing the contract of sale. This opinion cites in support of the conclusion there expressed a paragraph of like purport contained in 4 R. C. L., page 213, and quotes with approval the following excerpt from the opinion of this court in Womack, et al. v. Douglas, 157 Ky. 716:

> "It is well settled that a party who makes a contract like this is liable for the whole of the compensation agreed to be paid, although he did not own the land he placed with the broker for sale, or only owned an interest in it and was unable to carry out his contract because he did not own it, or because its other

owners would not consent to the sale, although there might be an exception to this rule if the broker had knowledge of the fact that the person making the contract was not authorized to do so. Rounds v. Allee, 116 Ia. 345; Oliver v. Morawitz, 97 Wis. 332; Gorman v. Hargis, 6 Okla. 360.''

If one who contracts with a broker for the sale of property jointly owned is liable to the broker for the full commissions where the broker is in ignorance of the condition of the title, and also where with the knowledge of a defect in the title it is agreed that the owner will perfect it, the same principle clearly applies where the broker has notice that the property is jointly owned, if the joint owner with whom he contracts represents that he has authority to act for all.

If defendant made the representations pleaded, and they were true, the validity of plaintiff's contract in this respect would be established. If so made and they were untrue defendant would not be permitted to claim otherwise, so that in either event under plaintiff's version of the contract those statements would estop defendant from claiming to the contrary. It follows that the court erred in sustaining the demurrer.

Wherefore, the case is reversed and cause remanded for proceedings consistent with this opinion.