## GRAF & CASE REALTY COMPANY, Respondent, v. HARRY F. LOVELL et al., Appellants.

**St. Louis Court of Appeals, February 3, 1914.**

1. **REAL ESTATE BROKERS: Time for Performance.** Where a contract authorizing a broker to sell real estate does not stipulate within what time the sale shall be made, reasonable time for performance is implied and reasonable diligence on the part of the agent is required.

2. ———: **Right of Owner to Revoke Authority.** Where a contract authorizing a broker to sell real estate does not stipulate within what time the sale shall be made, the owner has the right to discharge the broker, provided he acts in good faith and does not do so for the mere purpose of defeating the payment of a commission.

3. ———: **Action for Commission: Revocation of Authority by Owner: Instructions.** In an action by a real estate broker for a commission for effecting a sale of land, where there was evidence that he had consented to his discharge previous to the consummation of the sale, an instruction authorizing a recovery by him on the theory that he was the procuring cause of the sale, without requiring a finding that he did not consent to his discharge, was erroneous, since a broker who consents to his discharge cannot recover a commission for a sale subsequently made, even though the purchaser was a customer procured by him.

4. ————: ————: ————: ————. In an action by a real
estate broker for a commission for effecting a sale of land,
where there was evidence that, prior to the consummation of
the sale, he had been discharged by defendant, an instruction
that, even though plaintiff had been discharged, yet if his ef-
forts, prior to his discharge, were the procuring cause of the
sale, the jury should find for him, was erroneous, since if plain-
tiff was rightfully discharged, he was not entitled to recover.

Appeal from St. Louis County Circuit Court.—*Hon.*
*G. A. Wurdeman,* Judge.

REVERSED AND REMANDED.

*Wm. F. Broadhead* and *Ryan & Thompson* for ap-
pellants.

(1) The court erred in giving plaintiff's instruc-
tion No. 1. Dodge v. Childers, 167 Mo. App. 449; Lov-
ing v. Cattle Co., 176 Mo. 351; La Force v. Washington
University, 106 Mo. App. 523; Gamble v. Grether, 108
Mo. App. 340; Hughes v. Dodd, 164 Mo. App. 454. (2)
The broker must be the procuring cause of the con-
tract on which he depends for his recovery. It will
not suffice that his act be one of the chain of causes
producing the contract. It must be the *causa causans.*
Bigham v. Linville, 170 Mo. 354; Crain v. Miles, 154
Mo. 338. (3) If the agent fails to sell within the
terms of his authorization and the purchaser after-
wards buys the same piece of property on less terms
than those on which the first agent had authority to
sell, the chain of causation is broken because the ef-
forts of the first agent produced no result and his la-
bors, therefore, are not the proximate or procuring
cause, and, therefore, he is not entitled to commis-
sions. McCormick v. Obanion, 168 Mo. App. 606;
Wolff v. Rosenberg, 67 Mo. App. 403; Gamble v.
Grether, 108 Mo. App. 340; Crain v. Miles, 154 Mo.
App. 338. (4) The owner (principal) if he act in good
faith and not merely in furtherance of the purpose to

deprive the agent of a commission, may revoke the agency. Dodge v. Childers, 167 Mo. App. 448; Crain v. Miles, 154 Mo. App. 338; McCormick v. Obanion, 168 Mo. App. 606. Evidence of good faith and that sale was not made to avoid commissions is admissible. Cies v. Gale, 168 Mo. App. 286. Evidence that defendants did not know that O'Connor was Murphy's client should have been admitted. McLaughlin v. Hardin, 133 Mo. App. 605; Real Est. Co. v. Epstein, 157 Mo. App. 101. (5) The court erred in refusing defendants' instruction No. 4 as offered, and in changing and modifying it and giving it as thus changed and modified. The agency was not exclusive and defendants had the right to revoke it. Loving v. Cattle Co., 176 Mo. 351; La Force v. Washington University, 106 Mo. App. 523; Real Estate Co. v. Wainwright, 127 Mo. App. 514; Stevens v. Bacher, 162 Mo. App. 284; Hieronymous v. Atterbury, 156 Mo. App. 614; State ex rel. v. Walker, 88 Mo. 283; Crain v. Miles, 154 Mo. 338. (6) Plaintiff was not entitled to recover because under the testimony it was not the procuring cause of the sale, but, on the contrary, it failed to procure one ready, able and willing to buy upon the terms that plaintiff was authorized to sell. Wolf v. Rosenberg, 67 Mo. App. 403; Gamble v. Grether, 108 Mo. App. 340; Ramsey v. West, 31 Mo. App. 676; McLaughlin v. Hardin, 133 Mo. App. 605; Russell v. Poor, 133 Mo. App. 723; Hughes & Thurman v. Dodd, 164 Mo. App. 460.

*Julius R. Nolte* and *A. H. Kiskaddon* for respondent.

(1) Plaintiff's instruction number one correctly states the law. Gerhart Real Est. Co. v. Marjorie Real Est. Co., 144 Mo. App. 620; Weisels-Gerhart Real Est. Co. v. Epstein, 157 Mo. App. 101; Crone v. Mississippi Val. Trust Co., 85 Mo. App. 601. (2) Where real estate has been placed in the hands of an agent for sale

and a sale is brought about by his exertion, he is entitled to compensation even though the principal has conducted the final transfer personally or through another agent at a lower price and on different terms than the first agent, he being the procuring cause, was authorized to make. Holland v. Vinson, 124 Mo. App. 421; Sidebotham v. Spengler, 154 Mo. 15; Wright, etc., v. Brown, 68 Mo. App. 577; Stine v. Blesch, 42 Mo. App. 578; McCormick v. Henderson, 100 Mo. App. 647; Bassford v. West, 124 Mo. App. 248; Gerhart v. Marjorie, 144 Mo. App. 620; Bell v. Kaiser, 50 Mo. 150; Tyler v. Parr, 52 Mo. 249; Grether v. Carmack, 79 Mo. App. 325; Timmermann v. Craddock, 70 Mo. 638; Wetzel v. Weidner, 41 Mo. App. 509; Henderson v. Mace, 64 Mo. App. 393; Millan v. Porter, 31 Mo. App. 563; Bass v. Jacobson, 63 Mo. App. 393; Crone v. Trust Co., 85 Mo. App. 601; Fisher v. Realty Co., 159 Mo. 562; Hogan v. Slade, 98 Mo. App. 44; Cuniff v. Houseman, 97 Mo. App. 461; Hamilton v. Davidson, 168 Mo. App. 620.

NORTONI, J.—This is a suit by a real estate broker to recover commissions, on the theory that it was the procuring cause of the sale of a parcel of real estate. The finding and judgment were for plaintiff and defendants prosecute the appeal. We adopt from appellant's brief the clear and concise statement of facts prepared by its counsel.

"On behalf of the plaintiff the evidence tended to show the following:

"The plaintiff, Graf & Case Realty Company, is a corporation, and engaged in the real estate business in the city of Ferguson, St. Louis county, Mr. Charles Graf being its president and treasurer. Mr. James W. Darst lives in Ferguson, but is engaged in the real estate business in the city of St. Louis. Mr. John J. O'Connor lives in the city of St. Louis, and at the times mentioned in the evidence was on the lookout for

some real property in St. Louis county for the Hibernian Society, it being the intention of that society to purchase club and atheletic grounds in St. Louis county.

"On the 22nd of July, 1912, Mr. Darst took Mr. O'Connor out to Ferguson to show him some property. Neither of them at that time had ever heard of defendants' property, which we shall call the Lovell property. By chance they met Mr. Graf, told him of their quest and asked him if he knew of any property, whereupon he recommended the Lovell property. Plaintiff's testimony was, though this is denied by the defendants, that defendants had placed this property in the hands of the plaintiff for sale and had put a price upon it of $12,500. Mr. Graf, Mr. Darst and Mr. O'Connor on said 22nd of July visited and inspected the Lovell property and Mr. O'Connor was introduced to Mr. George C. Lovell, father and agent of defendants, and Mr. O'Connor was given the price as $12,500 and said he would refer it to the committee.

"One week later, to-wit, July 29, Mr. O'Connor, with several members of the committee, again visited and inspected the property, but did not say whether he would accept or reject the property at $12,500. On August 13, defendant Joe Lovell called on Mr. Graf, told him he was in a hurry to get things settled up and that if he could get $11,500 for the property the defendants would allow a reasonable commission. In this connection it might be observed that Joe Lovell testified that on this occasion he authorized Mr. Graf to sell at $11,000.

"Mr. Graf did not see Mr. O'Connor or have any communication with him after his second visit to the property on July 29, but testified he authorized Mr. Darst to negotiate with him, and Mr. Darst testified that he frequently conferred with Mr. O'Connor and urged him to buy the property. Mr. Graf says that when Joe Lovell authorized the sale of the property at

$11,500 he reported this authorization to Mr. Darst and Mr. Darst says that he reported to Mr. O'Connor, who in turn stated that he would take it up with his committee.

"On behalf of the defendants, the testimony tended to show:

"Defendants owned nine and one-fourth acres of land in St. Louis county, a part of which was within the city limits of Ferguson. The property was in the hands of their father, Mr. George Lovell, for management and sale. Defendants never put the property in the hands of the plaintiff for sale, but several times Mr. Graf had met Mr. George C. Lovell on the street and asked him if he was not getting tired of that piece of property, if he didn't want to sell it, to which he had answered that defendants had never had it for sale, but when Mr. Graf could find a customer that would give defendants their price they would sell it and move, but defendants had never listed it nor put it on the market nor said a word to the plaintiff about commissions. On July 22, on the occasion of the call of Messrs. O'Connor, Darst and Graf, Mr. George C. Lovell told Mr. Darst and Mr. Graf that the price of the property was $12,000 net. On August 13 defendant Joe Lovell called on Mr. Graf and told him he was anxious to close the sale up quickly and authorized him to sell the property for $11,000. No progress having been made toward consummating the sale, and defendants having received no offer whatever from O'Connor, on August 23 notified Mr. Graf that if he should not make the trade by August 25 he could consider his 'connection with the sale of this property off, discharged,' and to this Mr. Graf replied, 'All right.' No report of any kind was received thereafter from Mr. Graf or Mr. Darst. According to the testimony of Mr. O'Connor the only price at which the property was ever offered to him was $12,500 and neither Mr. Graf nor Mr. Darst at any time ever offered it to him at any other price. Mr.

Darst came to see him a couple of times and made this price, but witness positively rejected it and did not consider it further, but began to look for other property, and in connection with other property met Mr. Murphy, who is in the real estate business in St. Louis. Murphy, learning of the Lovell property from O'Connor, called on Mr. George C. Lovell on the 30th of August and secured his written authority to sell the property at $11,000 and pay him a commission of $500. On September 19, Murphy secured from O'Connor earnest money and an agreement to buy the property and the sale was consummated October 23, 1912, and this suit was filed the following day.

"The sharply disputed facts at the trial were:

"(a) As to the employment of plaintiff by defendants and the terms. Plaintiff's testimony was that for a long time he had had this property for sale at a price of $12,500, defendants to pay him a reasonable commission. Defendants' testimony was that at no time had they placed the property in the hands of the plaintiff for sale prior to the 22d of July, the day when O'Connor was brought to the property. That on that occasion Mr. George C. Lovell put a price upon the property of $12,000 net.

"(b) As to the subsequent authority given to plaintiff by Joe Lovell on August 13, plaintiff says that Joe Lovell authorized him on that day to sell the property for $11,500. Joe Lovell, on the other hand, testifies that he authorized the plaintiff to sell the property for $11,000.

"(c) As to the revocation of plaintiff's agency. Defendants' testimony is that they notified the plaintiff on August 23rd that his agency would terminate August 25th unless in the meantime the trade should be consummated and that plaintiff, through Graf, said 'All right.' Plaintiff denies this.

"(d) As to the terms on which the property was offered by Darst to O'Connor. Darst says he at first

offered the property to O'Connor at $12,500, but after August 13 he offered it to him at $11,500. O'Connor emphatically denies this and swears that the property at no time was offered to him at any other price than $12,500.

"(e)    Plaintiff states that O'Connor never accepted or rejected their proposition. O'Connor, on the other hand, testifies that the only price at which the property was offered to him was $12,500, and that he positively refused to buy."

Plaintiff's first instruction, given at its request, is as follows:

"The court instructs the jury that if you are satisfied from the evidence that the defendants, the Lovells, employed plaintiff, the Graf & Case Realty Company, as a real estate agent, to sell their property described in the petition, and that plaintiff itself and through its agent entered upon such employment and entered into active negotiations with one O'Connor for the purpose of effecting such sale, and if you further find that before the consummation of such negotiations defendant commenced other negotiations with O'Connor through one Murphy, and through said Murphy closed the sale with said O'Connor, then if you are satisfied from the evidence that the sale carried out by defendants and said O'Connor resulted from the efforts and negotiations of plaintiff, Graf & Case Realty Company and its agent, as aforesaid, and that said efforts and negotiations were the procuring cause thereof, you will find a verdict for plaintiff and against defendants, even though you may believe that defendants may have sold said property personally or through another agent, to O'Connor at a price less than that given to plaintiff, and on different terms than those plaintiff was authorized to make."

It is insisted that though this instruction is well enough in some cases, it is an improper one on the evidence here, and we are persuaded this argument is

sound. It appears in the evidence on the part of defendants that after plaintiff had negotiated for a full month from July twenty-second, without effecting a sale, one of the defendants informed him, on August twenty-third, that if he should not conclude the matter by August twenty-fifth his connection with the sale of the property ''was off;'' that he should consider himself discharged, and the evidence is that Mr. Graf, of the plaintiff company, said, ''All right'' to this. No time was stipulated as to when the sale should be made on the part of the agent, and, therefore, a reasonable time for the purpose is implied, and the law exacts reasonable diligence thereabout on the part of the agent.

There can be no doubt that the owners had the right to discharge plaintiff, the agent, at any time, if they acted in good faith in so doing and did not do so with the mere purpose of defeating the payment of commissions. However, during the pendency of a treaty of sale, the right to terminate the agency is not always clear, and it must depend upon the question of the good faith of the owner, when considered together with the facts and circumstances surrounding the particular transaction. [See Dodge v. Childers, 167 Mo. App. 448, 151 S. W. 749; Sallee v. McMurry, 113 Mo. App. 253, 88 S. W. 157.] Here, the evidence is, that while a treaty of sale was pending, the defendants notified plaintiff that he was discharged, if he did not consummate it by August twenty-fifth, and it may be inferred that he acceded to the proposal, for the evidence of defendants is that he said ''All right.'' At any rate, this evidence tends to prove plaintiff acceded to the proposition that his agency should terminate on August twenty-fifth. The instruction above copied submits the case to the jury without reckoning whatever with this feature of the evidence and authorizes a recovery for plaintiff without regard to the matter of its discharge —that is, if Mr. Graf agreed to it—and without regard to the right of defendants to discharge plaintiff at the

time for cause and in good faith, if plaintiff did not agree to it. If the jury should find that plaintiff agreed to the matter of terminating its agency on August twenty-fifth, as would appear from Mr. Graf's saying "All right" to the notification concerning it, then, of course, it should not be permitted to recover for a sale made by another agent on behalf of defendants thereafter. Then, too, if the jury should find that defendant acted in good faith in discharging plaintiff for that reasonable diligence was not being employed toward effecting a sale, and not for the mere purpose of defeating the payment of commissions, the finding should be for defendants. This instruction is erroneous in authorizing a recovery on the theory that plaintiff was the procuring cause of the sale without requiring any finding whatever concerning the matter above discussed.

Plaintiff's instruction No. 2, given at its request, is as follows:

"The court instructs the jury that, although you may believe, from the evidence, that defendants discharged plaintiff, Graf & Case Realty Company, and revoked their contract with it, still, if you further believe that the efforts of said plaintiff and its agent Darst, prior to said revocation, were the procuring cause of said sale, as set out in the other instructions, and that it was through the efforts of plaintiff and its agent that O'Connor was induced to buy the property in question, then your verdict will be for the plaintiff and against the defendants, even though said Graf & Case Realty Company were discharged and their contract revoked by defendants."

This instruction is erroneous, for it authorizes the jury to find for plaintiff even though it had been properly discharged as agent before the sale was consummated. Of course, if the agent were properly discharged, or if it agreed to the proposition that its authority should terminate on August twenty-fifth, as is

suggested in the answer of Mr. Graf, in employing the words "All right," no recovery should be allowed to it for a sale subsequently made by another agent, though the sale were made to one who was its customer in the first instance—that is, O'Connor. If the instruction required the jury to find that while plaintiff was proceeding with reasonable diligence to effect a sale to O'Connor, its agency was revoked without cause or in bad faith, for the purpose of escaping the payment of commissions, and that thereafter defendants, through another agent, sold the property to O'Connor, it would be well enough—that is, provided it required the jury to find, too, that plaintiff did not agree to the termination of its agency. In any view, however, this instruction is erroneous, for it authorizes a recovery if the sale was made to its customer, O'Connor, even after plaintiff was discharged, and this, too, without regard to the circumstances attending such discharge. If plaintiff were rightfully discharged, then obviously such terminated its rights in the premises, and no recovery may be allowed to it for a sale to O'Connor thereafter. The instruction does not limit the matter, as it should have done, to a wrongful discharge of plaintiff, but embraces as well a perfectly proper termination of its agency and allows a recovery though the agency had been properly revoked.

On a retrial of the case, the instruction on the measure of damages should be redrafted, for it is of doubtful propriety.

We have thoughtfully considered the instructions given for defendants and none of them supply the deficiency in those above copied and pointed out, for, besides plaintiff's first instruction, which is intended to cover the whole case, being deficient, as above suggested, it appears that plaintiff's second instruction is a positive misdirection to the jury. The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.