MAX KLIPPER ET AL., APPELLANTS, v. SAMUEL SCHLOSSBERG, RESPONDENT.

Submitted July 7, 1921—Decided November 2, 1921.

1. Unless a broker and his employer have stipulated to the contrary, the broker is entitled to his compensation upon the completing of the negotiations he undertook, irrespective of whether or not the contract negotiated is ever consummated, so long as the failure to carry it through to a successful completion is not due to any fault of the broker.

2. Defendant gave plaintiff an option to sell his property in which he agreed to pay a commission "for perfecting the sale." *Held,* that the "sale" contemplated by the parties was not the actual passing or devolution of title, but the execution of a contract of sale between the vendor and the proposed purchaser upon terms satisfactory to both.

On appeal from the Hudson County Court of Common Pleas.

Before Justices TRENCHARD, BERGEN and MINTURN.

For the appellants, *Eichmann & Seiden.*

For the respondent, *Gross & Gross.*

The opinion of the court was delivered by

MINTURN, J. Having been duly authorized by the defendant, in writing, to sell his certain real estate at the corner of Thorne street and Central avenue, in Jersey City, the plaintiff, a real estate agent, sold the property upon the terms stipulated, and now sues to recover the agreed commission. The writing was as follows:

"Jersey City, N. J., May 5, 1920.

I hereby give Klipper & Schoenberg a option to sell my property corner Central Avenue and Charles Street, 50 x 106 feet more or less, for the sum of $71,700. I agree to pay them a commission of $1,700 for perfecting the sale. This option holds good until Saturday, May 8.

S. SCHLOSSBERG."

Within one day after the execution of this agreement the plaintiffs sold the premises to a purchaser willing and able to complete the purchase upon the terms stated, who entered into a written contract with defendant for that purpose. Among the covenants contained in the contract of sale was one as follows: "The party of the first part covenants and agrees that there are no encroachments on the said property nor does the buildings on the premises aforesaid encroach on the prop-

erty adjoining, and that there are no tenement-house viola-
tions."

A survey of the premises disclosed encroachments on the
two adjoining streets, and the purchaser, therefore, refused to
take title. A Chancery suit for specific performance resulted,
but did not reach a decree, as defendant returned the pur-
chaser's deposit and his incidental expenses, and thereby
terminated the controversy.

The defendant now insists that since the agreement between
himself and the brokers was to pay them "a commission of
$1,700 for perfecting the sale" he is because of his failure
to perfect title not legally obligated to pay the brokers any-
thing. The Common Pleas so construed the agreement, and
hence this appeal. We think the contention is unsubstantial,
and construe the words in this situation as equal to "making
a sale." The familiar legal rule consummates the contract of
sale as between vendor and broker when the broker has secured
a purchaser willing and able to effectuate the purchase upon
the terms proposed. *Hinds* v. *Henry*, 36 *N. J. L.* 328; *Ryer*
v. *Turkel*, 75 *Id.* 677.

In contemplation of law, therefore, the broker has com-
pleted his work when he has secured a purchaser upon the
terms proposed by the seller. *Owen* v. *Riddle*, 81 *N. J. L.*
546; *Crowley Co.* v. *Myers*, 69 *Id.* 245; *McGavock* v. *Wood-
lief.* 20 *How.* (*U. S.*) 221.

The contract must be read in the light in which the parties
considered and framed it. Manifestly, it mattered not to the
broker, so far as his actual expenditure of work was concerned,
whether the defendant could perfect title or not.

The broker's work was done when by advertising or con-
sistent personal activity and expenditure of time and effort,
he had interested a willing and able customer, sufficiently to
meet the vendor's terms, and execute a contract of sale.
*Kruse* v. *Ferber*, 91 *N. J. L.* 470.

When he had effectuated that status his work was at an end
and the sphere of activity of the vendor to make good his pro-
posal began. For the result of that effort the broker is not
responsible, and his legal rights cannot in anywise be affected,

unless he has specifically so contracted, as was the case in *Leschziner* v. *Bauman,* 83 *N. J. L.* 743; *Morse* v. *Connolly, Id.* 416, and in *Volker* v. *Fisk,* 75 *N. J. Eq.* 498, where the sale specifically contemplated a perfecting of title in the vendee.

In *Kruse* v. *Ferber, supra,* this court stated: "This conception of the legal status of the parties [broker and vendor] places the plaintiff in the attitude of an employe, hired for a specific purpose, regardless of the interest of the employer in the subject-matter of the contract, and imposes liability upon the latter regardless of his ownership of the subject-matter."

In *MacBride* v. *Rogers,* 83 *N. J. L.* 407, the condition in the proposal of sale was that if the offer "was satisfactory" the vendor would sell. After the terms of sale had been agreed upon the owner sold to another, but was held liable to the broker for the commissions upon the first proposal.

In *Dresser* v. *Gilbert,* 81 *N. J. L.* 358, the vendor agreed to pay the commission for "selling said property upon sale thereof to him, me or any other person." Referring· to the general rule of liability already adverted to, this court declared it to be "a doctrine of public policy intended to effectuate justice between the parties," and held that after a sale of the property by the vendor the broker was entitled to his commissions.

A case comprehending the situation here involved, in a more marked degree than any other in this jurisdiction, is the recent case of *Steinberg* v. *Mindlir, ante p.* 206, decided by the Court of Errors and Appeals, where the language of the agreement was, "This agreement shall hold good only if the property is sold to a purchaser introduced" by the broker. That court there construed the word "sold" as the success of the broker in getting the buyer and seller together upon terms of sale.

It becomes manifest, therefore, the word "sale" in all these instances where the parties did not expressly otherwise stipulate, consisted in the bringing together of the vendor and a person able and willing to purchase upon the terms proposed.

The rule is not uniform in all jurisdictions, but such is the

trend of authority here. In consonance with it the corollary is equally true as declared in 4 *R. C. L.* 310, viz.: "The authorities are practically unanimous in holding that unless the broker and his employer have stipulated to the contrary, the broker is entitled to his compensation upon the completing of the negotiations he undertook, irrespective of whether or not the contract negotiated is ever consummated, so long as the failure to carry it through to a successful completion is not due to any fault of the broker," citing *Vinton* v. *Baldwin,* 88 *Ind.* 104.

It follows, therefore, that the "sale" contemplated by the parties to this contract was not the actual passing or devolution of title, but the execution of a contract of sale between the vendor and the proposed purchaser, upon terms satisfactory to both. Such a contract was executed, and with the execution of that instrument the "sale," so far as the broker was concerned, and so far as his efforts could effectuate a sale, was complete; and his legal right to compensation under the contract consequently became fixed and determined.

The result is that the judgment of the Common Pleas must be reversed.