WARREN, Appellant, v. TEMTE, Respondent.

(221 N. W. 93.)

(File No. 6212. Opinion filed September 29, 1928.)

*McFarland & Kremer,* of Watertown, and *Frederick A. Warren,* of Flandreau, for Appellant.

*Lindstrom & Benthin,* of Hayti, for Respondent.

MISER, C. This is an action to recover a commission for finding a purchaser for land. Defendant, respondent herein, owned an undivided one-half interest in a farm in Moody county. The other half interest was owned by a Dr. Hardin. The following part of the trial court's instructions, to which no exception was taken, fairly presents the issues:

"It is undisputed that the defendant and said Hardin owned said real estate together; and it is also undisputed that the plaintiff was employed to assist in consummating a sale of said premises; and, if you find from the evidence that the defendant employed the plaintiff to find a purchaser for said premises, *unconditionally,* and that said plaintiff brought the defendant and the purchaser together, and that a contract for the sale of said premises acceptable to the defendant was entered into, then your verdict should be for the plaintiff. * * * If, however, you find from the evidence that the defendant, at the time he employed plaintiff, informed the plaintiff that any sale of said premises must be upon the condition that the same must be acceptable to the said Dr. Hardin, and that the contract entered into with said purchaser was so entered into, *conditionally,* and subject to the acceptance or approval of the said Dr. Hardin, then your verdict should be for the defendant."

The following facts are also uncontradicted: Appellant found a purchaser. The purchaser signed a contract to purchase at $87 per acre, and gave to respondent his check for $200. Dr. Hardin was unwilling to sell for $87 per acre less a commission of $2 per acre. Respondent returned to the purchaser his check; and, by agreement between respondent and the purchaser, the contracts were destroyed. The important question of fact is whether it was one of the terms of appellant's employment that any sale of the property must be made subject to the approval of Dr. Hardin. Appellant contends that there was no evidence of such an understanding or such an agreement, and that his motion for a directed

verdict should have been granted. Respondent contends that there is ample evidence of such understanding, necessitating a submission of that issue to the jury, and that the verdict of the jury in favor of respondent is amply supported by the evidence.

The conversation between appellant and respondent, which constituted the contract, took place the last week of July, 1918. Some ten or fifteen days prior thereto, the land had been listed by Dr. Hardin himself with appellant.

Dr. Hardin testified that, about the middle of July, he obtained from respondent a thirty-day option to purchase respondent's half interest. A few days later, appellant asked Hardin to list the land with him for sale. Hardin then gave to appellant an exclusive sale privilege for the balance of the option period at the sale price of $87.50 per acre net to Hardin, appellant to have a commission of $2.50 per acre. Three or four days after Hardin listed the land, appellant reported that his prospective purchaser thought Hardin's price was too high. Hardin told appellant that, if it was necessary to make a reduction after appellant brought the purchaser to him, Hardin would do so.

Respondent testified that he did not know that appellant had listed this land from Hardin, but that, about the last of July, appellant asked him if they still owned the land and wanted to sell it, saying that he had a prospect for the purchase of it. Respondent told appellant that the doctor and he owned the land together, and, if they sold the land, it would have to be with Dr. Hardin's consent. Appellant then asked respondent if respondent could sell the land, to which respondent replied.

"I told him I figured I had as much right to sell it as anybody, but it would have to be with the consent of Hardin, because he owned a half interest in the land, and one would have to get a deed from him; but I didn't think we would have any trouble to get a deed."

With reference to that conversation and a conversation with appellant on the way out to talk to the prospective purchaser, respondent testified

"No; I couldn't remember the exact language. I can state the substance of what we said; that we would go out there, show the land, and try to make a sale, and, of course, would have to get the consent of the doctor before we would complete the sale; and,

of course, if there wasn't any sale, there wasn't anything to it and there would be no commission or anything else, just simply have to drop it; but didn't think we would have any trouble in getting Hardin's consent."

Respondent further testified that, after returning to town with the contract signed by the purchaser, he went to Hardin's office and thence to appellant's office, and told appellant that Hardin refused to sign any deed, that they could not consummate the sale, and would have to call it off entirely.

Appellant testified that, in the conversation with respondent, the latter part of July, appellant said, "I understood that Dr. Hardin had a right to sell this land"; to which respondent replied, "I also have a right to sell it, because we own it together." Appellant then said, "Are you certain?" to which respondent replied, "I know when I can do a thing or whether I can't." Appellant testified that nothing was said in this conversation as to getting Hardin's consent, and that the condition of Hardin's approval to the sale was not mentioned as one of the terms of his employment as a broker.

The evidence hereinbefore set out, while far from complete, is sufficient to show the conflict therein. Appellant contends that a broker engaged to sell realty is entitled to a commission on execution of contract of sale and payment thereon, though the sale was never consummated because the seller did not own all the land contracted to be sold. In support of this, appellant cites numerous authorities. Respondent, however, says that this contention of appellant needs no citation of authorities, being generally admitted and especially in this state. Respondent contends, however, that appellant overlooks the fact that it is alleged in the answer and strong evidence adduced at the trial to prove that there was a condition attached to the agency agreement, to wit, that Hardin should consent to that sale at $85 net to the owners, in order that appellant might be entitled to his commission.

■ Whether failure to complete the contract or transaction negotiated has any bearing upon a broker's right to be compensated for his services depends primarily upon the terms of the employment. 4 R. C. L. 310. The effect of the terms of the employment upon liability for compensation was not overlooked in Drury

v. Augsburg, 48 S. D. 110, 202 N. W. 284, where the court quotes from 4 R. C. L. 310, as follows:

"*Unless the broker and his employer had expressly stipulated to the contrary,* the broker is entitled to his compensation upon the completion of the negotiations he undertook, irrespective of whether or not the contract negotiated is ever consummated, so long as the failure to carry it through to a successful completion is not due to any fault of the broker."

 Appellant's right to compensation being then dependent upon the terms of employment, this issue having been fairly submitted to the jury by instructions to which no exceptions were taken, the jury by its verdict having resolved in respondent's favor any conflict in the evidence, the verdict and judgment thereon must stand, unless this court can say that there is no substantial evidence to support the verdict. A review of the whole evidence, giving respondent's evidence that favor to which it is entitled on motion by appellant to direct a verdict, as well as giving due consideration to the fact that the credibility of the witnesses is the peculiar province of the jury, does not permit this court to say that the judgment is so unsupported by substantial evidence as to require its reversal.

Appellant bases eleven assignments of error upon rulings upon the evidence which he contends were highly prejudicial to him. No useful purpose would be served by a full discussion of these assignments, each of which, however, has been carefully considered. It is recognized, as appellant contends, that errors in rulings upon evidence which, standing alone, would not be prejudicial, may, in the aggregate, create such an amount of prejudice as to demand reversal. However, when the rulings complained of are examined in the light of the pleadings, we find no prejudicial error in them.

After a careful review of the entire record, we are of the opinion that the judgment and order appealed from should be, and they are, affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.