WALTER OLSON v. R. A. PENKERT.

90 N. W. (2d) 193.

May 9, 1958—Nos. 37,239, 37,240.

---

[5]See, State v. Barnes, 249 Minn. 301, 81 N. W. (2d) 864.

336

*Olson & Nelson,* for plaintiff.
*H. R. Pfeiffer,* for defendant.

NELSON, JUSTICE.

Action by Walter Olson, a real estate broker, to recover a commission of $2,000 alleged to be due from Dr. R. A. Penkert as owner and principal under an oral agency listing. Plaintiff claims that he rendered services as a broker at the request of defendant in the sale of certain land in Meeker County, Minnesota, between the months of May and October 1955.

Defendant denies that he owes plaintiff a commission. He claims that plaintiff volunteered to find him a buyer for his farm; that he advised plaintiff at the time that he had the farm listed for sale with F. E. Rooney, a real estate broker at Grove City, Minnesota, but told plaintiff that if he found someone who he thought was definitely interested in buying the farm he was to come down and see him and talk

about it. Defendant informed plaintiff that the specified commission under the Rooney listing was $1,000, and that the sum was the limit of what he would pay in the event of a sale.

Without further communication between the parties modifying the oral listing, the plaintiff on September 19, 1955, presented to defendant an offer to purchase his farm signed by one Edwin F. Mino, in the form of a receipt which plaintiff had signed acknowledging the payment to him of $4,000 by the prospective purchaser. It purported to contain an offer to purchase the farm for $40,000, $10,000 of which was to be paid in cash and the balance on "Cont. For Deed." This receipt was introduced in evidence at the trial as exhibit A and received without objection. No specified commission had so far been agreed upon. Plaintiff brought this receipt to defendant's home at Hector and asked the defendant to sign it. Defendant asked plaintiff what his commission would be, and plaintiff replied that it would be $2,000. Defendant informed plaintiff that he would not pay a commission in that amount. Defendant inquired whether plaintiff would accept lesser sums, but plaintiff insisted that he wanted $2,000. He urged the defendant, however, to sign Mino's offer as shown by the receipt, stating that he was sure that they would be able to get together on the amount of the commission in the event of sale. Defendant testified that solely upon plaintiff's representation and in reliance thereon he signed the receipt.

The next evening on September 20, 1955, defendant called the plaintiff by telephone and advised him that, unless he was willing to accept a broker's commission in the sum of $800 in the event of a sale to Mino, he should not bring those people up from Iowa for the reasons that it would be of no use and meant going to a lot of trouble; if he was not agreeable to accepting a commission of $800, he should forget it. Defendant testified, "Olson agreed that he would bring the people up and he would accept the $800 as his fee."

Plaintiff brought the Minos to Hector and presented them to the defendant on the next day, September 21, 1955. Plaintiff and the Minos met with defendant at the office of William Sutor, attorney, where, after agreeing upon terms, a contract for deed was prepared and signed by buyer and seller. Before any delivery of the contract was effected

by defendant, plaintiff again told the defendant that his commission would have to be $2,000. Defendant rejected plaintiff's demand for a commission in that amount, refused to complete the deal, and withheld delivery of the contract. The Minos were informed of the commission dispute and of defendant's reasons for withholding delivery of the contract. He advised them the deal was being called off. The Minos did not object but indicated that they did not want to get mixed up in any trouble. They withdrew as purchasers without any later renewal of negotiations.

Mr. Sutor, called as a witness by defendant, testified that after the defendant left the office to obtain his wife's signature to the contract for deed he presented a commission agreement for $800 to plaintiff for signature; that plaintiff refused to sign; that upon his recounting to plaintiff the commission arrangement made over the telephone on the night before plaintiff replied that that was the agreement at one time but that now that the "Doc" is getting his full price, he should get 5 percent. When defendant returned he offered to get on with the deal and pay the plaintiff his commission of $800 but the plaintiff insisted he wanted $2,000, whereupon Sutor suggested that they call it a day. No delivery was made of either the original or any duplicate of the contracts for deed. The contract for deed was later declared null and void by court order.

Plaintiff testified that defendant had told him that he could work on selling the farm; that nothing was said about a commission; and on cross-examination he added that the defendant had never promised to sell the farm to a buyer the plaintiff might find but that he would sell if the buyer was acceptable and provided that Mr. Rooney had not found a buyer for it. He further testified that they met later in Litchfield when defendant inquired whether he had done anything in regard to the sale of the farm; that he informed the defendant that he had advertised it and had shown it to several people and that he was trying to find a buyer; that there was no further conversation relating to the listing at that time. He testified that when he went to the defendant's house on the evening of September 19 and exhibited to him the receipt described as exhibit A which defendant later signed that

evening, the matter of commission came up for discussion; that the defendant stated to him he would not pay over $1,000; and that plaintiff said he could not accept less than $2,000. The defendant asked him if he would accept $1,200 and then $1,600 and plaintiff says he declined. Defendant in his testimony stated that he asked plaintiff if he would accept $1,200 and $1,500, which plaintiff declined, but that he made no offer of these amounts. On cross-examination plaintiff added that prior to the evening of September 19 he had worked under the listing agreement without any stipulation or agreement as to commission. He denied that he had agreed to accept $800 and indicated that there had never, at any time, been an agreement specifying the amount of commission in the event of sale; that Sutor asked him to sign an agreement that he would accept $800 as his commission but that he declined insisting on a 5-percent commission. He said that when the defendant returned to the office he told him that unless he accepted $800 as his commission the deal would be off.

Plaintiff testified that in his opinion the reasonable value of his services was $2,000. The only other witness who testified on that issue was Mr. William Holmquist, a real estate broker called by plaintiff, who testified that in the absence of a specific agreement the usual commission on a farm was 5 percent.

The action was tried to a jury and resulted in a verdict for defendant. Plaintiff moved for judgment notwithstanding the verdict or for a new trial. The trial court ordered that the verdict be vacated and set aside; that the motion for a new trial be denied; and that plaintiff recover a judgment against defendant for $800. Judgment was entered, and plaintiff appeals from that part of the judgment adjudging that the plaintiff recover only the sum of $800 together with interest, costs, and disbursements. The defendant appeals from the judgment entered.

Plaintiff lists the following assignments of error: (1) The trial court erred in failing to award plaintiff a judgment in the amount of $2,000; (2) the trial court erred in finding the evidence supported an oral modification of an executed contract; (3) the trial court erred in finding there was consideration to support an oral modification of an executed contract. He contends that legal issues or abstract questions of law are in-

volved as follows: (1) Where only evidence as to customary value of broker's services was $2,000, was error committed in ordering judgment in a different amount? (2) Where sale is completed except for payment of broker's commission, can seller refuse to pay the commission? (3) Where a contract is complete but for payment of the customary broker's fee, is a supplemental agreement to accept less than the customary broker's fee supported by consideration and the evidence?

Defendant contends that the trial court erred in ordering that the verdict of the jury be vacated and set aside and in determining that the plaintiff was entitled to recover a judgment against the defendant in the sum of $800. His assignments of error are directed to the following legal issues: (1) Where the owner of property offers to let a broker produce a purchaser for property, upon condition that the broker will accept a certain sum for his commission, has the broker fully performed his part of the contract so as to be entitled to a commission when he produces a purchaser but at the same time claims a sum for his commission far in excess of that which he agreed to accept, and the owner declines to accept tender of performance? (2) Is a real estate broker entitled to a commission where he introduces a purchaser to the owner but no sale is concluded because of the fault of the broker?

█ Since the defendant was the prevailing party in the trial below, he is entitled, on appealing from a judgment granted notwithstanding the verdict of the jury, to have the evidence viewed in the light most favorable to him and to have the benefit of all reasonable inferences to be drawn therefrom.

We are not confronted here with a situation where the principal terminated the agency and thereafter completed the sale with a purchaser which the broker had found and brought to him, the owner profiting thereby without payment to the broker of his commission.

It is not our duty to test the final merit of the claims of the respective parties to the litigation in order to determine which party is to prevail. Rather it is our duty to consider whether in the light most favorable to the defendant and with every intendment in his favor the result is sufficiently justified to constitute a valid verdict.

It is important at this point to bear in mind a fundamental distinction

between a proposal and a contract of employment. For instance, an owner who merely "lists" his property with a land broker for sale may thereby make no promise or offer of any kind. The broker may solicit the owner for an opportunity to present a buyer if one comes along, but the owner's communication to the broker may be no more than an invitation for the submission of proposals that the owner may or may not accept. If that situation develops and there is no change, of course the owner is legally privileged to reject any proposal so made; it would constitute nothing more than an ordinary revocable authority, and upon such a rejection the owner is under no duty to pay the broker for services rendered, either pursuant to a broker's customary commission or on quantum meruit. See, 1 Corbin, Contracts, § 50; Rodblatt v. Fox, 191 Md. 620, 62 A. (2d) 548; Milligan v. Owen, 123 Iowa 285, 98 N. W. 792.

The author in 1 Corbin, Contracts, § 50, suggests that the immense amount of litigation with respect to the commissions of land brokers and other agents is in large part due to the fact that the terms of agreement between principal and broker are often expressed in vague form with no clear provision as to matters that become subjects of dispute and that therefore much must be supplied from usages of the business that are not too well known or too definitely proved. He states that gaps must be filled by that uncertain process called "implication," a mixture of determining the meanings of the parties by interpretation of their words and actions and of doing justice according to the mores and practices of the community; that the legal relations of the parties must vary with the variation of the operative facts of the particular transactions, their complexity and variation being increased by the fact that at least three parties are always involved—a seller, a purchaser, and a broker.

A broker is an agent and subject to the general rules that govern the relation of principal and agent. It is a well-settled rule that "An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished, the agent's prior efforts being

the effective cause thereof." Restatement, Agency, § 454.

As a general proposition, in the absence of special agreement, a real estate broker employed to find a purchaser for property at a particular price earns his commission when he produces a purchaser ready, willing, and able to purchase at the price and on the terms fixed by the seller. He is entitled to his commission when he has performed all that he undertook to perform. This rule, of necessity, depends on the agreement of the parties. If the terms are fully stipulated in the contract of employment between seller and broker, the broker need only show that he was the efficient cause of bringing together the seller and prospective purchaser ready, willing, and able to purchase on those terms. The agent's contract of employment, however, as between owner and broker may be such as to require the sale to be fully consummated before the broker is entitled to his commission. He is required to abide by the terms of the agency contract. That contract may provide for a fixed amount to be paid as a commission in the event of sale. 3 Dunnell, Dig. (3 ed.) § 1147, and cases cited.

■ In Goodman v. Marcol, Inc. 261 N. Y. 188, 184 N. E. 755, 88 A. L. R. 714, it was held that a real estate broker whose employment to sell property is for no definite term is entitled to a fair and reasonable opportunity to perform his obligation, and if this be granted, the right of the principal to terminate his authority is absolute and unrestricted, provided that he does not terminate the employment in bad faith and as a mere device to escape the payment of the broker's commission. See, Annotation, 88 A. L. R. 716. The court in the Goodman case also held that the broker is entitled to his commission notwithstanding his failure to perform his undertaking to bring the buyer and seller into agreement, where such failure is due to the fault of his employer, and that the question whether the owner had acted in good faith in terminating a broker's employment to sell was a jury question.

■ A broker is always bound to make a full and fair disclosure to his principal of all facts within his knowledge affecting the rights or interests of the principal in the sale. The agent must deal fairly with his principal to the extent that he must lay bare the truth, without ambiguity or reservation in all its stark significance. If he acts in bad faith or

commits a fraud upon his principal, he will forfeit his right to compensation. This rule is based upon the requirement that a broker owes the utmost good faith and loyalty to his principal.[1]

■ We think the rule well established that, if the efforts of the broker are rendered a failure by the fault of the employer, the broker does not lose his commission. *This rule is based upon the familiar principle that no one can avail himself of the nonperformance of a condition precedent who has himself occasioned its nonperformance.* Usually a broker is entitled to a fair and reasonable opportunity to perform his obligation. If this right be granted, the right of the principal to terminate his authority is absolute and unrestricted, provided, that he may not do it in bad faith and as a mere device to escape the payment of the broker's commission. Thus if, in the midst of the negotiations instituted by the broker and which were plainly and evidently approaching success, the seller should revoke the authority of the broker with the view of concluding the bargain without his aid and avoiding the payment of commissions about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal.

■ To maintain a claim for his commission, a broker must either show that he has procured a purchaser at the stipulated price and in accordance with the employment terms or that the defendant has deprived him of the opportunity to do so without cause while the privilege lasted.

We reach the conclusion that the main issue for determination in this case is involved in the answer to the question whether a real estate broker *is entitled to a commission where he introduces a purchaser to the owner but no sale is concluded because of the fault of the broker.*

It appears that the controlling principle here involved received consideration in Schramsky v. Hollmichel, 233 Minn. 481, 47 N. W. (2d) 177, but not as to the construction of the particular agency agreement presently involved. We find no decision of this court furnishing a direct

---

[1] Wendt v. Fischer, 243 N. Y. 439, 154 N. E. 303; also see, 3 Dunnell, Dig. (3 ed.) §§ 1139, 1143, 1145, 1147, and cases cited; 1 Dunnell, Dig. (3 ed.) § 200, and cases cited.

holding on the point in issue in the instant case. We held in the Schramsky case that, where a real estate broker's right to a commission is conditioned upon the actual consummation of a sale, it is incumbent upon him to show that such condition has been complied with or that the sale was not consummated because of refusal or fault of his principal. It was held in that case that the real estate broker, having admittedly contracted to sell the farm for defendant and having failed to show that the sale was not consummated through the fault of defendant, was not entitled to recover his commission. In Jacobson v. Rotzien, 111 Minn. 527, 530, 127 N. W. 419, 420, 856, this court said:

"* * * No sale or trade having been effected, and the evidence failing to show that the failure was because of a wrongful refusal upon defendants' part, the plaintiff was not shown to have earned his commission."

■ The great weight of authority is that, unless the broker and his employer have expressly stipulated to the contrary, the broker is entitled to his compensation upon the completion of the negotiations which he undertook, irrespective of whether or not the contract negotiated is actually consummated or whether the failure to complete the contract is due to the default or refusal of the employer or to that of the party procured by the broker, *so long as the failure to carry it through is not due to any fault of the broker or so long as he has not been guilty of fraud or bad faith.*[2]

---

[2]8 Am. Jur., Brokers, § 179, and cases cited under note 2; Preston v. Postel (S. D. Tex.) 300 F. 134; Warren v. Temte, 53 S. D. 491, 221 N. W. 93; Drury v. Augsburg, 48 S. D. 110, 202 N. W. 284; Waddle v. Smith, 58 Ind. App. 587, 108 N. E. 537; T. W. Sandford & Co. v. Waring, 201 Ky. 169, 256 S. W. 9; Klipper v. Schlossberg, 96 N. J. L. 397, 115 A. 345; F. E. Ollinger Co. v. Benton, 156 Wash. 308, 286 P. 849; Evans v. Rublee, 108 Wash. 174, 183 P. 83; Beale v. Creswell, 3 Md. 196; West v. Kirby Lbr. Co. (Tex. Civ. App.) 193 S. W. 172; Alexander v. Sherwood Co. 72 W. Va. 195, 77 S. E. 1027, 49 L.R.A. (N.S.) 985; Elliott v. Kazajian, 255 Mass. 459, 152 N. E. 351; especially see, Russo v. Slawsby, 276 Mass. 126, 176 N. E. 794; Doten v. Chase, 237 Mass. 218, 129 N. E. 363.

The following case would indicate that the fact that the parties were to meet again is evidence tending to show they did not intend that the previous

A broker, authorized to procure a customer under the ordinary listing of property without a fixed time and provided with nothing more than the ordinary revocable authority, takes the chance that all his efforts may go for naught because he is not able to secure a customer ready, willing, and able to purchase on the terms fixed by the owner. He may make his right to a commission dependent upon the actual consummation of the transaction in accordance with the terms stipulated by the owner and, if the broker fails to comply with the terms stipulated in the agency agreement, he takes the chance of the owner's refusing to convey to a customer he has procured.[3] There are cases which hold that, where it is stipulated that no commission is to be paid unless a sale is actually consummated, and the sale is not consummated because the owner refused to complete it, the broker is not entitled to his commission if such refusal was for reasonable cause, but is entitled to his commission if such refusal was arbitrary and without cause. Huntley v. Smith, 153 Minn. 297, 190 N. W. 341; see, Chapman v. Merchants Trust Co. 184 Minn. 467, 239 N. W. 231; 3 Dunnell, Dig. (3 ed.) § 1147.

The jury in the instant case found that plaintiff had entered into an agreement with the defendant to accept a commission of $800 in the event of a sale to his prospect, Mino. It is only reasonable to infer from the particular facts herein that the jury considered that whatever prevented the consummation of the sale was due to fault on the plaintiff's part and further found that due to fault on his part he had not earned and was not entitled to a broker's commission.

■ The broker's right to compensation depends upon a performance of the stipulations and conditions of the contract of agency, and the broker must act strictly according to the authority conferred upon him by the principal. The court in Heurich v. Sullivan, 52 App. D. C. 95, 97, 281 F. 599, 601, said:

---

negotiations should amount to a final agreement. Cadigan v. Crabtree, 179 Mass. 474, 61 N. E. 37, 55 L. R. A. 77, 88 A. S. R. 397, followed by Id. 186 Mass. 7, 70 N. E. 1033, 66 L. R. A. 982, 104 A. S. R. 543.

[3]See, Spring v. Nagle, 104 Conn. 23, 131 A. 744; Lawrence v. Hamilton, 111 Conn. 493, 150 A. 690; Ford v. Brown, 120 Cal. 551, 52 P. 817; Pagum v. White, 259 Mass. 437, 156 N. E. 711.

"We think the deviation from the authority granted is fatal to plaintiff's right to recover. * * *

\* \* \* \* \*

"It is settled law that a broker, before he is entitled to his commission, must not only find a purchaser able, ready, and willing to buy, but upon the identical terms authorized by his principal. It is a rule of agency which admits of no exception, and courts do not hesitate to strictly enforce it. Any other course would open the door to fraud, and place the principal at the mercy of his agent."[4]

■ The testimony in the instant case is, in many respects, decidedly conflicting. The question of the defendant's good faith in terminating the authority of his broker was for the jury. Clearly, the question of the plaintiff's good faith, in acting for the owner as his agent, must also be determined by the jury.

It was for the jury to say whether plaintiff had complied with the terms of his employment contract and the owner's instructions which provided the conditions under which he was privileged to present his prospective purchaser. It was for the jury to resolve the disputed fact issues as between plaintiff and defendant, to pass upon the credibility of the witnesses, to determine from the testimony as a whole who as between plaintiff and defendant was at fault in preventing the sale, and to render their verdict accordingly.[5]

The plaintiff attaches considerable importance to the receipt given to his prospective purchaser Mino. The defendant testified that plaintiff obtained his signature to this receipt in reliance on plaintiff's statement that they would get together on the amount of the commission. The fact that a prospective purchaser has made a payment of earnest money to the broker and obtained a receipt therefor does not make a

---

[4]See, Sibbald v. Bethlehem Iron Co. 83 N. Y. 378, 38 Am. R. 441.

[5]Branch v. Moore, 84 Ark. 462, 105 S. W. 1178; Baskett v. Jones, 189 Ky. 391, 225 S. W. 158.

Also see, Graf & Case Realty Co. v. Lovell, 180 Mo. App. 706, 163 S. W. 877, wherein the court said that the right to terminate the agency is not always clear, and it must depend upon the question of the good faith of the owner, when considered together with the facts and circumstances surrounding the particular transaction.

contract for purchase of realty an executed contract where such payment was merely by way of evidencing good faith of purchaser and securing performance on his part. See, Palmer Bros. v. Havens, 29 Tenn. App. 8, 193 S. W. (2d) 91.[6] The receipt as we view it had no more binding effect as to the final outcome than does the certified check which the bidder deposits with the statement of the amount of his bid, evidencing his good faith.

In Goodwin v. Siemen, 106 Minn. 368, 118 N. W. 1008, this court said that, under a writing evidencing the commission to be paid, no commission was due until the deal was brought to a completion by an actual transfer of the title of the property by an exchange of deeds.

■ Plaintiff has contended that any agreement fixing the amount of the commission in the event of sale at $800 would be a modification of the oral agency listing and therefore without consideration and not binding upon him. He therefore contends that even though the jury so found his right to a commission is based upon reasonable value and measured by commissions customarily paid in the vicinity. We think in view of plaintiff's testimony, if an agreement involving an $800 commission was entered into as defendant contends, then it was not a modification but the first agreement fixing the commission to be paid in the event of sale. However, this court has consistently held beginning with Wilson v. Hayes, 40 Minn. 531, 540, 42 N. W. 467, 471, that "Parties can alter their contract by mutual consent, and this requires no new consideration, for it is merely the substitution of a new contract for the old one, and this is of itself a sufficient consideration for the new."

---

[6]The words "execute" and "executed" when used in their proper sense convey the meaning of carrying out some act or course of conduct to its completion, and, when applied to a written instrument, include the performance of all acts necessary to render it complete as an instrument importing the intended obligation and of every act required to give the instrument validity or to carry it into effect or give it the form required to render it valid. The term "executed" when applied to contract includes delivery and implies complete contract. See 15A Wd. & Phr. (Perm. ed.) p. 235, for definitions of "execute" and "executed"; Black, Law Dictionary (4 ed.) pp. 395, 676; Northwest Steel Rolling Mills v. Commr. of Int. Rev. (9 Cir.) 110 F. (2d) 286; Smith v. School Dist. No. 1, 187 Okl. 184, 102 P. (2d) 131.

Rye v. Phillips, 203 Minn. 567, 282 N. W. 459; Mitchell v. Rende, 225 Minn. 145, 30 N. W. (2d) 27. Plaintiff's contention is therefore without merit on either ground.

The court instructed the jury in effect that, if there was no modification of the original oral listing or a new agreement as to the payment of a specified commission, the defendant would be bound to pay under the law of reasonable value for the services performed. The court instructed the jury that, since the original agreement or listing had made no provision as to a stipulated amount of compensation to be paid plaintiff in the event of sale, the law would imply an obligation on the part of the owner to pay the reasonable value of the services rendered by the real estate broker. The court further instructed the jury that, if they should find that the plaintiff had agreed to accept a commission of $800 in the event of sale, they should apply the law as follows:

"Now we come to the second part of this lawsuit. As the Court has indicated, Dr. Penkert contends that on September 20th the original agreement was modified, in other words, that they entered into a new verbal contract which superseded the original one, and that in this new contract it was agreed that the commission of Mr. Olson should be $800, and that he was not to bring up the parties from Iowa unless he were willing to accept $800.

"Now, if you find from the evidence that the claim of Dr. Penkert is true, that there was such an agreement made on the night of September 20th over the telephone, then the plaintiff, Mr. Olson, in this case, cannot recover anything, because the evidence is undisputed that he broke or breached the agreement as modified, if you find that there was in fact a modification or a new agreement, because it furthermore appears that Mr. Olson, of course, refused to accept the $800. That is undisputed. And if you find that the agreement was that the payment of the $800 was conditional upon the sale being made, and that his commission was dependent upon that, then of course the plaintiff in this case cannot recover."

Plaintiff made no objection to the charge. In his motion for a new trial in the court below he assigned as one of his grounds: "Errors of law occurring at the trial regarding the instructions submitted to the

jury." He did not specify in what respect the court had erred as to fundamental law or controlling principle, to which he was limited if he meant to comply with and come under Rule 51, Rules of Civil Procedure. The grounds as alleged are meaningless without seasonably, distinctly, and adequately setting forth in what respect the court had erred as to fundamental law or controlling principle. It cannot be enlarged on appeal.

Rule 51 supersedes M. S. A. 547.03 in so far as the statute is applicable to the giving of instructions to the jury in civil actions. The rule states the prior law as to objections to instructions. MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 43 N. W. (2d) 221; Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912; Dehen v. Berning, 198 Minn. 522, 270 N. W. 602; Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754. If objection is not made at the trial to an error in the instructions with respect to fundamental law or controlling principle, it must be assigned in a motion for a new trial before it can be presented to the supreme court on appeal. The first two sentences of the rule are substantially the same as Federal Rule 51 and the last two sentences state the prior Minnesota law.[7]

Under the circumstances the trial court's charge, even though erroneous, became the law of the case by which the sufficiency of the evidence to support the verdict is determined. Upon the particular record in the instant case, the jury being bound to accept the law as the court gives it to them, the rules of law laid down in the charge must be applied here and are controlling. Caballero v. Litchfield Wood-Working Co. Inc. 246 Minn. 124, 74 N. W. (2d) 404; Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354; Hess v. Koskovitch, 241 Minn. 174, 62 N. W. (2d) 806; Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561; Marion v. Miller, 237 Minn. 306, 55 N. W. (2d) 52; MacIllravie v. St. Barnabas Hospital, *supra;* Steinbauer v. Stone, *supra.*

While the trial court denied plaintiff's motion for a new trial, it granted plaintiff judgment notwithstanding the verdict for $800 and

---

[7]See, 2 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 51, pp. 554, 555.

interest. The court in its memorandum indicates that it came to the conclusion that it had erred in instructing the jury that, if they found that the plaintiff had agreed to accept a commission of $800 in the event of sale, he could not recover; but that the error did not justify a new trial because the jury had upon competent evidence found that such an agreement was made. Nevertheless the court below took the view that, the jury having found that the plaintiff had agreed to accept a commission of $800 in the event of sale, it followed as a matter of law that plaintiff was entitled to judgment against the defendant for $800 and interest. The plaintiff, however, having made no objection to the charge in the court below and having made no seasonable and adequate presentation of errors in the instructions, if any, with respect to fundamental law or controlling principle, was left with only one remedy available, i.e. a new trial, which the court denied, not judgment contrary to the verdict. The rule is well established in this state that judgment notwithstanding the verdict will never be granted for errors in either law or procedure committed at the trial. Bosch v. Chicago, M. & St. P. Ry. Co. 131 Minn. 313, 155 N. W. 202; Northwestern Marble & Tile Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077; Daily v. St. Anthony Falls Water Power Co. 129 Minn. 432, 152 N. W. 840; Eichler v. Equity Farms, Inc. 194 Minn. 8, 259 N. W. 545.

As the record stands, the sufficiency of the evidence is our only consideration. Smith v. Pearson, 44 Minn. 397, 46 N. W. 849; Smith v. Gray Motor Co. 169 Minn. 45, 210 N. W. 618.

Viewing the record as a whole it is our conclusion that the question of who is entitled to prevail upon the conflicting fact issues depends upon a determination of who was at fault in preventing the sale. If the plaintiff acted in bad faith and was at fault, it was for the jury to say whether under those circumstances he had earned his right to a commission. In other words, the jury was entitled upon the state of this record to consider the good and bad faith of the litigants herein in their approach to the agency transaction. We nevertheless think the charge was basically sound and in view of the verdict of the jury without prejudicial error. It is therefore ordered that judgment that

the plaintiff recover $852 be reversed, vacated, and set aside, and that the verdict of the jury be reinstated and judgment thereupon entered in favor of defendant in accordance with the decision herein.

Reversed and remanded for reinstatement of the verdict.